IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| William Foster,<br>Individually and on behalf of all<br>others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>Check Alert Systems, Inc.,<br><br>    Defendant. | §§§§§§§§§§§ | Civil Action B-02-196<br><br>Jury Demanded |

### Motion for Class Certification, and Brief in Support

Willaim Foster ("Foster" or "Plaintiff") moves to certify this case as a class action against **Check Alert Systems, Inc.** ("Check Alert" or "Defendant").

### Introduction

This is an individual and class action seeking damages and injunctive relief from Defendant for their violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("Texas DCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices. Foster brought this case as a class action because Defendant's practices are routine and damage many consumer debtors in addition to himself.

Foster, sues on his own behalf and, as class representative, sues on behalf of two classes of consumers:

    **Class 1.**    All consumers in the United States who have been the victims of the illegal acts of Defendant that violated the FDCPA, beginning October 11, 2001 (one year prior to the date the Complaint was filed) and continuing to the present.

**Motion for Class Certification, and Brief in Support**, page 1

**Class 2.** All consumers residing in Texas who have been victims of the illegal acts of Defendant that violated the Texas Act, beginning October 11, 2000 (two years prior to the date the Complaint was filed) and continuing to the present.. Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint was filed are also members of Class 1.

Foster seeks declaratory relief, money damages, restitution, and a permanent injunction forcing Check Alert to stop its illegal practices.

### Facts

In determining whether a class will be certified, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (quoting *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

The merits of the case are not examined and the substantive allegations of the complaint should generally be taken as true. *Eisen v. Carlisle & Jacquelin, supra* at 177.

Nonetheless, to allow the Court to determine the nature of the dispute, Foster provides the following facts taken from his Complaint.

1. William Foster is an individual residing in Brownsville, Cameron County, Texas.

2. Foster and each of the other members of the class are "consumers" as defined in FDCPA and the Texas Act.

3. Check Alert Systems, Inc. is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

4. Check Alert is a "debt collector" as defined by FDCPA and the Texas Act.

**Motion for Class Certification, and Brief in Support**, page 2

5. Check Alert engaged in collection efforts in Brownsville, Cameron County, Texas by sending a debt collection letter to Foster's address in Brownsville, Texas.

6. In collecting debts, Check Alert engaged in a variety of illegal acts and practices in collecting debts, using letters similar to the one dated May 24, 2002, that it sent to William Foster.

7. Check Alert Systems, Inc. represented that if William Foster did not contact it to resolve the matter, it would take further legal action to collect a debt when it did not plan to do so and did not in fact do so.

8. Check Alert Systems, Inc. represented that under State Law, it could commence criminal charges against the debtor, when it did not plan to do so and did not in fact do so.

9. Check Alert Systems, Inc. did not maintain a surety bond as required by Section 392.101 of the Texas Finance Code.

**Relief Sought**

Foster seeks a declaratory judgment from this Court pursuant to 28 U.S.C. Sections 2201 and 2202, declaring that Check Alert Systems, Inc. regularly engages in the practices described herein and that these practices violate the FDCPA and the Texas Act.

As to Defendant's violations of the FDCPA against him individually, Foster seeks $1,000.00 statutory damages, as provided by the FDCPA, 15 U.S.C. § 1692k(a).

As to members of Class 1, Foster seeks actual damages of all Class 1 members consisting of all money obtained from them by Defendant, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1).

As to members of Class 1, Foster seeks in addition, without regard to minimum individual recovery, an award in the amount of 1 % of Defendant's net worth, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(2)(B).

As to the members of Class 2, pursuant to the Texas DCPA, TEX. FIN. CODE § 392.403(a) & (e), Foster seeks an order of the Court directing Check Alert Systems, Inc. to restore to all class members all money obtained by Check Alert Systems, Inc. through the threat of any other illegal acts in violation of the Texas Act and the Texas Deceptive Trade Practices Act, plus statutory damages of $100.00 per violation.

Foster seeks a permanent injunction prohibiting Defendant from engaging in the illegal practices set forth above.

Foster also seeks attorneys' fees and costs, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1), and the Texas DCPA, TEX. FIN. CODE § 392.403(b).

**The Applicable Law**

The most widely used test used for analysis of debt collection abuse claims is the least sophisticated consumer standard. "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin Landry, deLaunay and Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

Violations of both the FDCPA and the Texas DCPA should be evaluated from the perspective of the least sophisticated consumer. However, even from the perspective of the most educated, distrustful, and sophisticated consumer, Defendant's practices are illegal.

Foster has demonstrated that Defendant engaged in the three forms of abusive debt collection.

**Motion for Class Certification, and Brief in Support, page 4**

**First, in its form collection letters, Defendant represented that if the consumers did not contact it to resolve the matter, it would take further legal action to collect a debt when it did not plan to do so and did not in fact do so.** This violates the FDCPA, which provides in pertinent part that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

15 U.S.C. § 1692k(3).

This practice also violates the Texas DCPA, which provides in pertinent part that:

> Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices: . . . (8) misrepresenting the character, extent, or amount of a consumer debt, or *misrepresenting the consumer debt's status in a judicial or governmental proceeding.*

TEX. FIN. CODE § 392.304(a) [emphases added].

**Second, in those same letters, Defendant represented that it could commence criminal charges against the debtor, although it did not plan to do so and did not in fact do so.** Because Texas law does not allow such criminal charges, this threat was false. This violates the same sections of the FDCPA and the Texas DCPA discussed above.

**Third, Check Alert violated the Texas Act by engaging in debt collection without filing the required bond.** Finance Code § 392.101 provides: "A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section. A copy of the bond must be filed with the secretary of state." Violation of this requirement Finance Code

**Motion for Class Certification, and Brief in Support, page 5**

allows Foster and the class to recover "not less than $100 for each violation." § 392.403(e).

These actions establish liability as a matter of law. Whether Foster or any other class member was misled is not an element of this cause of action. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991). Similarly, there is no issue of intent, bad faith or negligence. "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

## Grounds for Certification

Foster brought this lawsuit as a class action because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) his claims are typical of the claims of the class, and (4) he can and will fairly and adequately protect the interests of the class. All four criteria of Rule 23(a) and at least one of the criteria of Rule 23(b) must be met for the case to be certified as a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Foster bears the burden of establishing these requirements. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. Numerous FDCPA cases have been certified as class actions. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Cope v. Duggins*, 2000 U.S. Dist. Lexis 5081 (E.D.La., April 13, 2000); *Woodard v. Online Information Services*, 191 F.R.D. 502 (E.D.N.C. 2000); *Talbott v. GC Services*; 191 F.R.D. 99 (W.D.Va. 2000); *Swanson v. Mid Am, Inc.*, 186

**Motion for Class Certification, and Brief in Support**, page 6

F.R.D. 665 (M.D.Fla. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983); *Cheqnet Systems, Inc. V. Montgomery*, 911 S.W.2d 956 (Ark. 1995); *D_Alauro v. GC Services Ltd, Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); *Stewart v. Slaughter*, 165 F.R.D. 696 (M.D.Ga. 1996); *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.Ill. 1995); *Duran v. Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

In this case, Foster has established that all four Rule 23(a) criteria exist and that the case should be certified both under Rule 23(b)(2) and 23(b)(3). Foster will discuss each criterion in turn.

### Numerosity — Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F. 2d 1030, 1038 (5th Cir. 1981). However, "[i]mpracticable does not mean impossible." *Rabidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D.Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill. 1994)(24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, supra, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (10-29 sufficient); *Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D.Ill. 1992) (about 70).

**Motion for Class Certification, and Brief in Support**, page 7

"A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

In discovery, Defendant admitted that—just for the one-year period May 25, 2001-May 24, 2002—it mailed debt collection letters in the form sent to Foster to approximately 14,878 debtors nationwide, of which 34 were mailed to consumers with a Texas address.

Foster has satisfied the numerosity requirement.

### Commonality — Rule 23(a)(2)

Rule 23(a)(2) requires that there be a common question of law or fact and that "resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986).

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of fact is present where the defendant has engaged in similar conduct, i.e.- sending a form collection letter to the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Not all factual or legal questions raised in the litigation need be

**Motion for Class Certification, and Brief in Support**, page 8

common so long as at least one issue is common to all class members. *Cope v. Duggins,* 2000 U.S. Dist. LEXIS 5081, *9 (E.D.La, April 14, 2000); *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56-57 (3d Cir. 1994). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984); See also *Keele v. Wexler,* supra

"To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D.Fla. 1999).

Foster has done that. Commonality is clear.

### Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that Foster's claims be typical of the claims of the class. *Jenkins v. Raymark Industries, Inc.,* 782 F. 2d 468, 472 (5th Cir. 1986).

Foster's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted); see also, *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598-600 (2d Cir. 1986); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

In this case, typicality is inherent in the class definition — each class member is

## Adequacy — Rule 23(a)(4)

There are two criteria for determining adequacy under Rule 23(a)(4):

(1) The named representatives must have a common interest with the unnamed members of the class, and there must be an absence of conflict or antagonism between the interests of the named plaintiffs and the other members of the proposed class, and

(2) It must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims.

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1974).

Foster's interest is identical to the other class members. He has by his actions shown that there is no antagonism between his interests and those of the absent class members.

Foster has retained experienced counsel to represent the class.

Plaintiffs' lead counsel Stephen Gardner is a nationally-recognized consumer protection expert who has handled class action and related cases of similar and greater magnitude for many years. Currently, he is in private practice in Dallas, Texas, and also serves Of Counsel to the National Consumer Law Center in Boston. From 1992-1995, Mr. Gardner was Assistant Dean of Clinical Education and visiting assistant professor of law at Southern Methodist University. He was formerly an assistant attorney general in Texas and New York, from 1982 until 1991, involved in major consumer-protection initiatives against such companies as AAMCO, Mobil Oil, Kellogg Company, and TCI Cable. Mr. Gardner's major publications include: H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) (contributing editor); CONSUMER CLASS ACTIONS, National Consumer Law Center (contributing author); THE PRACTICE OF CONSUMER LAW, National Consumer Law Center (author); UNFAIR AND DECEPTIVE ACTS AND PRACTICES, National Consumer Law Center (contributing author); LOST IN THE SUPERMARKET: CONSUMER CONFUSION AND MARKETING MANIA, NUTRITION LABELING HANDBOOK 1995;

SEE DICK AND JANE SUE: A PRIMER ON STATE CONSUMER PROTECTION LAWS, American Law Institute 1992; and HOW GREEN WERE MY VALUES: REGULATION OF ENVIRONMENTAL MARKETING CLAIMS, Toledo Law Review 1991. He is Board Certified as a Civil Trial Specialist by the Texas Board of Legal Specialization. Among other positions, Mr. Gardner has served as a member of the Board of Directors, of Consumers Union of U.S., Inc. (the publisher of Consumer Reports magazine), 1997-2000; a member of the Board of Directors of the National Association of Consumer Advocates, 1996-2002 (current chair emeritus); and a member of the Consumer Advisory Council of the Federal Reserve Board of Governors, 1986-1989.

Plaintiffs' counsel John Ventura is a nationally-recognized bankruptcy and consumer protection attorney who has handled class action and related cases for years. Currently, he is the Owner of the Law Offices of John Ventura, P.C. with the main office in Brownsville, Texas, an office in Harlingen, Texas and an office in McAllen, Texas. Mr. Ventura is a member of the Consumer Bankruptcy Committee; E-File Committee; Advertisement Review Board for the State Bar of Texas; Member of Consumer Law Council. He has also served as Past President of the Rio Grande Valley Bankruptcy Bar Association, Past Vice-President of the Rio Grande Valley Bankruptcy Bar Association; and Coordinator of the agenda and speakers for the Annual Advanced Bankruptcy Seminar. In addition, Mr. Ventura has authored the following books: THE BANKRUPTCY KIT; THE CREDIT REPAIR KIT; FRESH START: BEATING THE PAYCHECK TO PAYCHECK BLUES; THE SMALL BUSINESS SURVIVAL KIT;, THE WILL KIT; and EVERYTHING YOUR HEIRS NEED TO KNOW, as well as LAW FOR DUMMIES, DIVORCE FOR DUMMIES, the LAW KIT FOR DUMMIES, and GOOD ADVICE FOR A BAD ECONOMY. He has also been a guest on CNN, CNNFN, Bloomberg Television & Radio, The Fox News Channel, National Public Radio, Business Talk Radio, and numerous local radio and television programs around the country.

Richard A. Mlynek is an experienced litigation attorney who worked for a large civil litigation law firm in Corpus Christi and Houston from 1998-2003 before joining the Law Offices of John Ventura, P.C. this year. Prior to becoming an attorney, Mr. Mlynek worked as a claims adjuster handling property damage and personal injury claims. Mr. Mlynek's practice is now concentrated on consumer and personal injury litigation. Mr. Mlynek is the co-director of the litigation department for the Law Offices of John Ventura, P.C.

The adequacy of both Foster and his counsel is clear.

### Rule 23(b)(2) — Injunctive and Declaratory Relief

Rule 23(b)(2) requires Foster to show only that Defendant acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole. *Harik v. California Teachers Ass'n*, 298 F.3d 863, 873 (9th Cir. 2002). The facts are that the entire class of consumers to be represented by Foster was treated in exactly the same way, as a matter of the proposed class definition.

Defendant sent illegal collection letters to all class members. A pattern of activity that is likely to be the same for all class members is all that is required. *Baby Neal v. Casey*, 43 F.3d 48, 63-64 (3rd Cir. 1994).

Because Texas law allows for injunctive relief, and because Foster also seeks a declaration that Defendant violated the FDCPA, it is proper to certify this case for injunctive and declaratory relief. Because Defendant also damaged Foster and other class members, it is appropriate to certify a damages class as well, under Rule 23(b)(30, as discussed in the next section.

### Rule 23(b)(3) — Predominance

Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 582 (E.D.La. 1976).

"Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997) (citations omitted).

Predominance exists when there is an essential common factual link between all class members and the Defendant for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, (9th Cir. 1996).

In this case, the common link is that all class members, by definition, were subjected to Defendant's practice of sending letters that violate both the FDCPA and the Texas DCPA.

Where Defendant has standardized practices that impact the defined class as a whole, common issues of fact or law predominate over individual questions. *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D.Miss. 2000); *Cope v. Duggins*, supra; *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D.Miss. 1993).

Here, the only individual issues for trial will be (1) identification of the consumers who were subject to Defendant's collection attempts and (2) determination of the amounts collected from those individual consumers by Defendant, both capable of determination from Defendant's records, after certification. This is not the kind of problem that is a barrier to class certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D.Ill. 1989).

The questions of law and fact common to the members of the class predominate over questions affecting only individual members.

### Rule 23(b)(3) — Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fair and efficient adjudication of the controversy." *Jenkins v. Raymark Industries, Inc.*, supra at 472. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997); *Neely v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 15599, *38 (E.D.Tex. Aug. 16, 2001).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D.Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)

In this case there is no better method available for the adjudication of the claims that might be brought by each individual debtor subjected to Defendant's practice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class actions are a more efficient and consistent means of trying the legality of a collection letter. *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D.Cal. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); also see *Newberg on Class Actions*, §21.14 (3d ed. 1992).

The efficacy of consumer class actions is recognized particularly where the individual's claim is small, as is the case here. As the U.S. Supreme Court held:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Predatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:
>
> > "The policy at the very core of the class action mechanism is to overcome the problems that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor, supra* at 117 S.Ct. at 2246.

Class certification of an action for abusive debt collection practices provides an efficient and appropriate resolution of the controversy. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Cheqnet Systems, Inc. v. Montgomery*, 911 S.W.2d 956 (Ark. 1995).

A class action is therefore superior to other available methods for the fair and efficient adjudication of the controversy.

### Prayer

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this action as a class action.

Respectfully submitted,

**John Ventura**
Federal ID No. 1646
State Bar No. 20545700
**Richard A. Mlynek**                          **Stephen Gardner**
Federal ID No. 23125                           Federal ID No. 16111
State Bar No. 24007689                         State Bar No. 07660600
**Law Offices of John Ventura, PC**            **Law Office of Stephen Gardner, PC**
62 East Price Road                             6060 North Central Expy., Ste. 560
Brownsville, Texas 78521                       Dallas, Texas 75206
Telephone: (956) 546-9398                      Telephone: (214) 800-2830
Telecopier: (956) 542-1478                     Telecopier: (214) 800-2834

Counsel for Plaintiff and the Class

By: _____
Stephen Gardner

### Certificate of Conference

On January 12, 2004, I conferred with Keith Wier about this motion. Defendant does not agree to certification.

_____
Stephen Gardner

### Certificate of Service

On January 13, 2004, a true and correct copy of the foregoing was sent by United States Mail, in compliance with the Rules of Civil Procedure, to:

Keith Wier/Tina Brumbelow
Day & Ray
5718 Westheimer, Ste. 1750
Houston Texas 77057

_____
Stephen Gardner