United States District Court
Southern District of Texas
FILED

APR 3 0 2004

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| William Foster, | § | |
| Individually and on behalf of all | § | |
| others similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action B-02-196 |
| | § | |
| Check Alert Systems, Inc., | § | Jury Demanded |
| | § | |
| Defendant. | § | |

### Reply Brief in Support of Motion for Class Certification

Willaim Foster ("Foster" or "Plaintiff") files this reply brief in support of his motion to certify this case as a class action against Check Alert Systems, Inc. ("Check Alert" or "Defendant").

### Introduction

In this class action, Foster seeks declaratory relief, money damages, restitution, and a permanent injunction forcing Check Alert to stop its violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("TDCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices. The basis for Foster's complaint and for his motion to certify is the collection letter dated May 24, 2002, that Check Alert sent to Foster. This is a form letter that Defendant admittedly sent to thousands of class members. Foster refers to Check Alert's form as the "Letter."

Foster will address Check Alert's arguments in opposition to certification in the order Check Alert raised them in its Brief in Support of Its Response to Plaintiff's Motion for Class Certification ("Response").

**Reply Brief in Support of Motion for Class Certification**, page 1

**Evidentiary Hearing**

Check Alert has requested oral argument on this motion, and Foster agrees with that request, if the Court finds it desirable. Moreover, if the Court concludes that there are any factual issues affecting certification, Plaintiff requests an evidentiary hearing.

## I.

**The "least sophisticated consumer" standard applies in this case.**

The test used for analysis of debt collection abuse claims is the least sophisticated consumer standard. "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin Landry, deLaunay and Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

Check Alert argues that Foster is a "sophisticated" consumer. However, Check Alert violated the law when it sent the letter, and any arguments about Foster's actual understanding are irrelevant. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991).

## II.

**Check Alert improperly seeks a decision on the merits of this case.**

Check Alert argues that the Letter does not violate the FDCPA or the TDCPA because it does not threaten further legal action and does not threaten the commencement of criminal charges.

**Reply Brief in Support of Motion for Class Certification**, page 2

Check Alert's ultimate liability under the law is not an issue at this point. A merits-based argument is not appropriate at certification stage. In determining whether a class will be certified, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (quoting *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971). The merits of the case are not examined and the substantive allegations of the complaint should generally be taken as true. *Eisen v. Carlisle & Jacquelin, supra* at 177.

In any event, Foster showed in his deposition testimony that he read the Letter to threaten both criminal charges, and some form of unspecified action against him.

> Q.    Okay. When you got this letter in the mail, the
> one that's in front of you dated May 24th of '02, what did you
> think?
> A.    My first impression was "I need to pay this as
> soon as possible, it's one of a couple I've received
> now." And I noticed that it was pretty serious, that I
> needed to take care of this as soon as possible,
> particularly because of the verbiage on it.
> Q.    Okay. And what verbiage are you thinking about
> when you say it was pretty serious and you needed to take
> care of it?
> A.    I would specifically say it's that there was
> grounds for possible filing criminal charges against me
> for not making this payment.

Deposition of William Foster, attached to Response as Exhibit D, at 36:5-18

**Reply Brief in Support of Motion for Class Certification**, page 3

Q.    Do you see anywhere in that letter where my

client, Check Alert, alleges that they would take legal

action against you if you didn't pay this check?

A.    (Witness examines document) I believe where it

says "grounds for criminal charges," that would be a

legal action.

Q.    Okay. So what further legal action did Check

Alert threaten to take against you?

A.    Well, it's very vague where it says "to avoid

further action." I don't know what "further" means; they

do not establish that.

Deposition of William Foster, at 45:20-46:5.

Thus, the evidence shows that Foster read the letter in the same fashion as he alleges a

less-sophisticated consumer would read it.

Check Alert raises the issue whether it is really liable to the class under the Texas law's

surety bond provision. This, too, is wholly a merits argument and Foster will not brief it at this

time, except to note that the only Texas court opinion to support Check Alert's position is *Elston*

*v. Resolution Services, Inc.*, 950 S.W.2d 180 (Tex. App.—Austin 1997). When it is proper to

reach the merits, Foster will discuss why the plain language of TEX. FIN. CODE Ch. 392.101

shows that *Elston* is incorrectly decided and why Check Alert's failure to obtain a bond before

engaging in debt collection activities in Texas makes all of its activities while it failed to comply

with the bond requirement (including collecting money from Texas residents) voidable. *See,*

*generally, Coastal Liquids Transp., L.P. v. Harris County Appraisal District*, 46 S.W.3d 880

(Tex. 2001).

**Reply Brief in Support of Motion for Class Certification**, page 4

## III.

### Foster has easily satisfied the numerosity requirement.

Check Alert claims that Foster has not satisfied the numerosity requirement of Rule 23(a)(1) because he has not described a class that is identifiable and has not shown that joinder is impracticable. Response at 10-13.

Foster seeks certification of two classes of consumers. In his Motion, he proposed to define the classes as:

> **Class 1.**     All consumers in the United States who have been the victims of the illegal acts of Defendant that violated the FDCPA, beginning October 11, 2001 (one year prior to the date the Complaint was filed) and continuing to the present.

> **Class 2.**     All consumers residing in Texas who have been victims of the illegal acts of Defendant that violated the Texas Act, beginning October 11, 2000 (two years prior to the date the Complaint was filed) and continuing to the present.. Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint was filed are also members of Class 1.

In his Motion, Foster showed that Defendant has admitted that—just for the one-year period May 25, 2001-May 24, 2002—it mailed debt collection letters in the form of the Letter sent to Foster to approximately 14,878 debtors nationwide, of which 34 were mailed to consumers with a Texas address. Motion at 8.

Check Alert does not dispute these figures. Instead, Check Alert says that there are no objective criteria by which the class can be ascertained. Response at 10. Check Alert is incorrect. The "illegal acts" to which Foster refers are the repeated mailings of the Letter. This could not be more objective. However, Foster proposes that the Court refine[1] his proposed definition to be even more objective (new language in ***bold italics***):

---

[1]     A court is not bound by the class definition proposed by plaintiff and should modify it as appropriate. *In re Monumental Life Ins. Co.*, ___ F.3d ___, 2004 WL 718806 *4 (5th Cir. 2004).

**Reply Brief in Support of Motion for Class Certification**, page 5

**Class 1.**    All consumers in the United States *to whom Defendant mailed a letter in the form of the letter dated May 24, 2002, that it sent to William Foster,* beginning October 11, 2001, and continuing to the present.

**Class 2.**    All consumers residing in Texas *to whom Defendant mailed a letter in the form of the letter dated May 24, 2002, that it sent to William Foster,* beginning October 11, 2000, and continuing to the present. Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint was filed are also members of Class 1.

With either definition, it is not necessary to inquire into the dealings between Check Alert and each class member. "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

The fact that some class members responded to the threat of criminal prosecution by sending money to Check Alert does not matter, nor does Check Alert's speculation (Response at 11) that some class members may not have construed the letter as a threat of criminal action. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991).

Check Alert's fallback argument on numerosity is that Plaintiff has not proven that joinder is impossible.

Check Alert admitted that—just for the one-year period May 25, 2001-May 24, 2002—it mailed debt collection letters in the form of the Letter it sent to Foster to approximately 14,878 debtors nationwide, of which 34 were mailed to consumers with a Texas address.

As Foster said in the Motion, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F. 2d 1030, 1038 (5th Cir. 1981). However, "[i]mpracticable does not mean impossible." *Rabidoux v.*

**Reply Brief in Support of Motion for Class Certification**, page 6

*Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D.Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill. 1994)(24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, supra, 113 F.R.D. 60, 62 (N.D.Ill. 1986) (10-29 sufficient).

The class period is now approximately three years for the FDCPA Class 1 and four years for the TDCPA Class 2. As to the Class 1, Check Alert admits that there are 14,878 class members exist for just one year. And Check Alert admits that there are 34 Class 2 members for that same year.

"A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986). If the figures provided by Check Alert hold true, then there are approximately 45,000 Class 1 members and 140 Class 2 members.

Joinder of this many people as parties to this action is clearly not practicable.

### IV.

### Foster has established commonality.

Check Alert briefly argues, Response at 13, that "there is no evidence that there is at least one issue common question [*sic*] of law or fact applicable to all class members because Plaintiff assets [*sic*] that he is seeking class certification for illegal acts of Defendant without specification as to what illegal activity is common to the members of the class."

**Reply Brief in Support of Motion for Class Certification**, page 7

In his Motion at 5, Foster said that Check Alert's form Letter represented that it would take further legal action and that it could commence criminal charges, but that it did not actually plan to take either step.

The common issue is the form Letter that Check Alert sent to thousands of class members. "To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D.Fla. 1999).

Check Alert's objection is incorrect. Foster was quite specific, and his proposed amended class definition makes it even more clear.

## V.

### Foster has established typicality.

Rule 23(a)(3) requires that Foster's claims be typical of the claims of the class. *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986). Foster's claim is typical because it arises from the same Letter that gives rise to the claims of other class members and his claims are based on the same legal theory.

The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted); *see also, Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598-600 (2d Cir. 1986); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Check Alert challenges the typicality of Foster's claims on two grounds. First, Check Alert asserts, without any discussion, that "the likelihood that any claims of putative class mem-

bers would share the same factual scenario, as explained herein, is remote and therefore renders Plaintiff's claims atypical." Response at 15. Second, it says that Foster "failed to report his accrued claims against Check Alert, as an asset to the bankruptcy court." Response at 14. From this, Check Alert speculates that "Plaintiff, and/or his attorney(s), concealed and deliberately waited until his bankruptcy was over to file his claims against Check Alert." Response at 15.

As to the first point, Foster has shown that his claim and the claims of the class are based on the identical "factual scenario"—Check Alert sent each of them the same form Letter. In support of its conclusory allegation, Check Alert cites *Lewis v. Johnson*, 92 F.R.D. 758 (E.D.N.Y. 1981). In that case, the class representative was held to be atypical because (1) he did not rely on representations of the defendant in the same was as the class was alleged to have done, and (2) he was "subject to unique defenses which may imperil class recovery." 92 F.R.D. at 760. Since reliance is not an issue here and since Check Alert has not alleged any "unique defenses" at all, much less any that might imperil class recovery, this point is incomprehensible.

Turning to the second point—Foster's conduct toward the bankruptcy court—Check Alert apparently did not know all the facts. As set forth in the attached Affidavit of John Ventura, shortly after Foster's Chapter 7 discharge order was entered, Foster and his counsel became aware of Foster's claim against Check Alert, and promptly gave notice of the claim to the Bankruptcy Trustee, with amended schedules that listed the claim and proposed to exempt it. When the Trustee did not respond to two notices, Foster filed the amended schedules with the court and notified all creditors. No party objected.

Thus, Foster advised the Trustee, the Court, and the creditors of his potential claim in a timely manner, at about the same time this lawsuit was filed in 2002. None of the persons notified have raised any objection.

**Reply Brief in Support of Motion for Class Certification**, page 9

Nonetheless, in a possible excess of caution, earlier this year Foster's counsel formally filed a motion to reopen the bankruptcy case to confirm the filing of the amended schedules.

Foster's counsel anticipates that the bankruptcy court will reopen the case and permit the filing of the amended schedules, which will put an end to this issue.

Notwithstanding all this, Check Alert urges that Foster is judicially estopped to bring his claims now. Response at 13-15. The leading case on judicial estoppel in this circuit is *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).

The Fifth Circuit defines judicial estoppel as "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." 179 F.3d at 205. In that case, the party filing for Chapter 11 had failed to include "claims of up to $10 million" in its schedules. 179 F.3d at 203. The dispute occurred 10 years later. 179 F.3d at 204.

The Fifth Circuit noted that "The doctrine is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice'." 179 F.3d at 206. "Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position." 179 F.3d at 206.

Neither prong applies here. As to the first, there is no inconsistent position taken by Foster. He merely did not realize he had a contingent claim against Check Alert until after the discharge was granted, at which time he immediately brought it to the attention of the Trustee, the bankruptcy court, and all creditors. At to the second prong, Foster never advanced any position

**Reply Brief in Support of Motion for Class Certification**, page 10

to the bankruptcy court relating to his claims against Check Alert; he certainly never convinced the court to accept any previous position.

"Our review of the jurisprudence convinces us that, in considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." 179 F.3d at 210.

As clearly stated in the attached affidavit, neither Foster nor his counsel knew of his potential claim until after discharge. He had no motive for concealment. Indeed, he did not conceal anything—he made full disclosure to all interested parties in 2002.

Check Alert is merely attempting to avoid liability for its violations of the law. There is no valid basis to invoke judicial estoppel.

## VI.

### Foster is a good class representative, and has clearly satisfied the adequacy requirement.

There are two criteria for determining adequacy under Rule 23(a)(4):

(1) The named representatives must have a common interest with the unnamed members of the class, and there must be an absence of conflict or antagonism between the interests of the named plaintiffs and the other members of the proposed class, and

(2) It must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims.

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1974).

Check Alert claims that Foster is not adequate because (1) he did not alert the bankruptcy court to his claim against Check Alert (Response at 16-17), (2) "he lacks a sufficient interest in outcome to ensure vigorous advocacy" (Response at 18), (3) he has not "conducted any investigation of or research into the identify [*sic*], residence, or any other information regarding the putative class members" (Response at 18), (4) "he has not conducted any investigation of or re-

**Reply Brief in Support of Motion for Class Certification**, page 11

search into his attorneys' ability to serve as class counsel" (Response at 18), (5) he doesn't understand the lawsuit except as to that which he learned from his lawyers (Response at 18), and (6) "Plaintiff, like the putative class members, is also seeking actual damages on his individual claims" (Response at 18). Foster will address each in turn.

1.    **Foster did alert the bankruptcy court to his claim against Check Alert**, as discussed above, both in 2002 and earlier this year.

2.    **Foster's actions have shown a sufficient interest in the outcome of this case**. Foster instructed his counsel to bring this case, and he has participated in discovery, both written and deposition. The basis for Check Alert's accusation is essentially that Foster does not have a law degree, that he has not developed the ability to articulate how Check Alert violated the various laws, and that he instead relies on his lawyers to do that

3.    **Of course Foster has not investigated the identity of other class members**—that is a job for his lawyers and is not a relevant inquiry until after the Court has decided whether to certify this case.

4.    **There is no evidence that Foster did not investigate his lawyers' abilities to serve as class counsel**. The sole piece of evidence on which Check Alert relies is deposition testimony by Foster that, although he had talked on the phone with lead counsel Stephen Gardner, he had not met him in person:

```
Q.    (BY MR. WIER) Do you know Stephen Gardner?

A.    How do you mean?

Q.    Have you ever met him?

A.    Over the phone.

Q.    You've never met him in person?

A.    No, sir.
```

**Reply Brief in Support of Motion for Class Certification**, page 12

Deposition of William Foster at 62:4-9. Thus, although John Ventura represented Foster in both his bankruptcy and this case, together with other lawyers at Mr. Ventura's office, and although Foster had spoken with Mr. Gardner on the telephone, Check Alert urges the Court to find Foster inadequate solely because the two of them never sat down face-to-face. And from this one fact, Check Alert tells the Court that Foster "has not conducted any investigation of or research into his attorneys' ability to serve as class counsel" (Response at 18). This is not merely unsupported nonsense; it borders on misrepresentation to the Court.

5.  **Foster is entitled to rely on his lawyers to understand the lawsuit**. Check Alert makes the assertion that Foster does not understand the lawsuit except through his lawyers. This assertion is contradicted by record evidence, as shown by this excerpt from Foster's deposition:

> Q.   And what is your understanding, in your own
> words, of the purpose of this lawsuit with regard to the
> class action allegations?
> A.   Purpose, I would say to collect any damages to
> myself and others over the improper use of verbiage on a
> collection letter by Check Alert Systems. And I would
> say, ultimately to correct their way of business.

Deposition of William Foster at 62:4-9. This reflects a good understanding of the lawsuit by Foster, all by himself. Even if it were the case that he relied on his counsel, Foster is entitled to do so, to help him understand a complicated class action involving several laws.

6.  **Foster seeks no more actual damages than other class members**. For himself, Foster seeks damages under the FDCPA and TDCPA. For the class, Foster seeks the same thing. See Plaintiff's Original Complaint ¶¶ 17-19 and 21-23. He is not out to feather his own nest to a greater extent than other class members. His deposition testimony showed that he was interested

**Reply Brief in Support of Motion for Class Certification, page 13**

in getting the most he could for himself, but also that he did not intend to get more money than other class members. Deposition at 78:2-19.

Check Alert has wholly failed in its effort to show Foster as anything other than an informed, involved, and committed class representative.

## VII.

### Injunctive relief under Rule 23(b)(2) is appropriate.

Check Alert opposes certification for injunctive relief because Foster also seeks damages, citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998). Response at 20-21. Check Alert misreads both Foster's Motion and the holding in *Allison*.

Foster seeks two forms of certification—(1) under Rule 23(b)(2) for an injunctive/declaratory class and (2) under Rule 23(b)(30 for a damages class. Motion at 12-13.

In *Allison*, the Fifth Circuit considered certification under Rule 23(b)(2), with a request for damages in addition to injunctive relief. "Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case. When it does, the relatively complex calculations typically required in class actions for money damages are unnecessary. For these reasons, proposed (b)(2) classes need not withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting only individual class members, as (b)(3) classes must." 151 F.3d at 414.

Considering the claims made in that case, the Fifth Circuit held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory re-

**Reply Brief in Support of Motion for Class Certification**, page 14

lief. By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." 151 F.3d at 415 [internal citation omitted]. The Fifth Circuit concluded that those plaintiffs' "claims for compensatory and punitive damages are not sufficiently incidental to the injunctive and declaratory relief being sought to permit them in a (b)(2) class action." 151 F.3d at 417. The Fifth Circuit therefore affirmed the discretion of the district court in denying certification under Rule 23(b)(2).

The Fifth Circuit then considered whether the district court should have allowed a "hybrid" action—a combination of a (b)(2) class for injunctive and declaratory relief with a (b)(3) class for damages. This is the type of certification sought by Foster.

In *Allison*, the Fifth Circuit affirmed the district court's refusal to certify a hybrid class because the "predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims." 151 F.3d at 419. In other words, the Fifth Circuit rejected a hybrid class in that case because it could not satisfy the (b)(3) requirements of predominance and superiority. Foster addressed these issues in his Motion at 13-15, and will address Check Alert's objections in the next section of this reply.

A very recent Fifth Circuit case clarifies the meaning of *Allison*.

"*Allison* did not hold, as the district court believed, that monetary relief predominates where it is the 'prime goal' or a mere bootstrap to injunctive relief. Instead, 'determining whether one form of relief actually predominates in some quantifiable sense is a wasteful and impossible task that should be avoided.'" *In re Monumental Life Ins. Co.*, ___ F.3d ___, 2004 WL 718806 *4 (5th Cir. 2004) (citing *Allison*, 151 F.3d at 412).

**Reply Brief in Support of Motion for Class Certification**, page 15

"Monetary relief must be incidental, meaning that it is 'capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.' Additional hearings to resolve 'the disparate merits of each individual's case' should be unnecessary." *Id.* (internal citations and footnote omitted).

"Therefore, to deny certification on the basis that the damage claims would be better brought as a rule 23(b)(3) class serves no function other than to elevate form over substance. Indeed, interests of judicial economy are best served by resolving plaintiffs' claims for injunctive and monetary relief together." 2004 WL 718806 *6 (footnote omitted).

Foster and the class have both injunctive claims and damages claims. Under Allison and Monumental Life, it serves the purposes of the class action rule and judicial economy to resolve all issues in this one lawsuit.

## VIII.

### A damages class is superior to any other possible form of resolution.

Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 582 (E.D.La. 1976). "Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997) (citations omitted). Rule 23(b)(3) also requires that a class action be "superior to other available methods for fair and efficient adjudication of the controversy." *Jenkins v. Raymark Industries, Inc.*, supra at 472. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy pre-

sented. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997); *Neely v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 15599, *38 (E.D.Tex. Aug. 16, 2001).

Foster has extensively briefed the superiority of a class action and has shown that class issues predominate over individual issues, in his Motion at 13-15, and he will not repeat that briefing here.

Instead, Foster addresses Check Alert's attacks on superiority and predominance in its Response at 22-24. Check Alert says that (1) trial will involve separate individual determinations as to the merits of each class member's claims, (2) damages claims for each class member vary wildly, (3) trial will not be manageable, and (4) costs of administering the class will be expensive. Foster will address each in turn.

**1.    This case can be tried in one simple trial.**

All class members, by definition, were subjected to Defendant's practice of sending letters that violate both the FDCPA and the TDCPA. Class certification of an action for abusive debt collection practices provides an efficient and appropriate resolution of the controversy. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589 (E.D.Cal. 1999); *Cheqnet Systems, Inc. v. Montgomery*, 911 S.W.2d 956 (Ark. 1995).

Here, the only individual issues for trial will be (1) identification of the consumers who were subject to Defendant's collection attempts and (2) determination of the amounts collected from those individual consumers by Defendant, both capable of determination from Defendant's

**Reply Brief in Support of Motion for Class Certification**, page 17

records, after certification. This is not the kind of problem that is a barrier to class certification. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 678 (N.D.Ill. 1989).

**2.    The damages as to each class member can be determined.**

Check Alert says that trial will involve determination of class members' emotional distress (Response at 21 and 23), their medical injuries (Response at 23), and "what kind of abusive collection efforts was each plaintiff subjected to" (Response at 23).

Check Alert is wrong on all points. The complaint is quite clear. As to Class 1, Foster seeks "actual damages to all class members consisting of all money obtained by Check Alert Systems, Inc. through the threat of any illegal acts in violation of FDCPA," plus "an award in the amount of the lesser of $500,000.00 or 1% of the net worth of Check Alert Systems, Inc." Plaintiff's Original Complaint ¶¶ 18-19. As to Class 2, Foster asks that the Court order Check Alert "restore to all class members all money obtained by Check Alert Systems, Inc. through the threat of any other illegal acts in violation of the Texas Act and the Texas Deceptive Trade Practices Act." Plaintiff's Original Complaint ¶ 23.

Thus, Foster seeks the return of money illegally obtained by Check Alert. This can be learned from Check Alert's own records. Foster also seeks the lesser of $500,000.00 or 1% of the net worth of Check Alert, as allowed by FDCPA § 1692k(a)(2)(B).

Foster does not seek emotional damages, physical damages, or any other form of damage other than restitution of the amounts that Check Alert obtained by using the Letter that threatened criminal action it had no intention of taking.

The Letter is self-defining. It is, in Check Alert's words, the precise "kind of abusive collection efforts was each plaintiff subjected to."

The damages are specific and do not require individual assessment.

**Reply Brief in Support of Motion for Class Certification**, page 18

**3.    This case is manageable.**

Next, Check Alert says that the Court is "faced with the likelihood of thousands of bifur-cated proceedings before multiple juries." Response at 23. The problem with this allegation is that it is wholly manufactured by Check Alert without any factual or legal basis.

The most common way of trying a class action is to try the common issues first, with in-dividual issues determined later. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, Fourth § 21.5 (2004); 3 NEWBERG ON CLASS ACTIONS, §§ 9.54-9.56 (4th ed. 2002).

Here, the issues are common and relatively simple—did Check Alert's Letter violate the FDCPA and the TDCPA? If not, then the trial ends. If so, then the trial proceeds to damages. As discussed above, the damages are easily determined from Check Alert's own records—the amounts it collected and the amount of its net worth.

Class actions are a more efficient and consistent means of trying the legality of a collec-tion letter. *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D.Cal. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); *also see* NEWBERG ON CLASS ACTIONS, §21.14 (3d ed. 1992).

The specter of thousands of proceeding is mere phantasm.

**4.    Costs of administering the class are irrelevant.**

Check Alert's last argument is that a class action is not superior to individual actions "be-cause the recovery per class member could be de minimis, once an identifiable class is ascer-tained, and the administrative costs would be unduly burdensome." Response at 24.

Check Alert fails to offer any evidence in support of this allegation. It merely says that having two classes (Class 1 for FDCPA and Class 2 for TDCPA) requires dual mailings to class members, with dual opt-out procedures and obligations. Response at 24.

Foster has no idea where Check Alert got this idea. All class members are defined by one clear objective matter—did Check Alert send them the Letter? As Foster has consistently said, Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint was filed are also members of Class 1. There is no reason at all to send separate notices. It is commonly done to send one notice even when there is more than one class, and that is what Foster proposes here. There is little or no likelihood of confusion.

This manufactured and unsupported argument should be rejected.

### Prayer

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this action as a class action. If the Court concludes that there are any factual issues affecting certification, Plaintiff requests an evidentiary hearing.

Respectfully submitted,

**John Ventura**
Federal ID No. 1646
State Bar No. 20545700
**Moises M. Salas, Jr.**
Federal ID No. 17506
State Bar No. 00786217
**Law Offices of John Ventura, PC**
62 East Price Road
Brownsville, Texas 78521
Telephone: (956) 546-9398
Telecopier: (956) 542-1478

**Stephen Gardner**
Federal ID No. 16111
State Bar No. 07660600
**Law Office of Stephen Gardner, PC**
6060 North Central Expy., Ste. 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Telecopier: (214) 800-2834

Counsel for Plaintiff and the Class

By: _____
Moises M. Salas, Jr.

**Reply Brief in Support of Motion for Class Certification**, page 20

**Certificate of Service**

On April 30, 2004, a true and correct copy of the foregoing was sent by United States Mail, in compliance with the Rules of Civil Procedure, to:

> Keith Wier/Tina Brumbelow
> Day & Ray
> 5718 Westheimer, Ste. 1750
> Houston Texas 77057

Moises M. Salas, Jr.

**Reply Brief in Support of Motion for Class Certification**, page 21

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| WILLIAM FOSTER | § | |
| Individually and on behalf of all | § | |
| others similarly situated | § | |
|       Plaintiffs, | § | |
| | § | CIVIL ACTION NO. B-02-196 |
| VS. | § | |
| | § | |
| CHECK ALERT SYSTEMS, INC. | § | |
|       Defendant. | § | |

**<u>AFFIDAVIT OF ATTORNEY JOHN VENTURA</u>**

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF CAMERON | § |

COMES NOW, John Ventura of the Law Offices of John Ventura, P.C., and, having duly sworn upon his oath, deposes and states as follows:

"On or about June 6, 2002, William Lee Foster, filed a voluntary petition under Chapter 7 of the Bankruptcy code. The Law offices of John Ventura, P.C. represented Mr. Foster in his Chapter 7 filing. On September 12, 2002, the Court entered an Order Discharging Mr. Foster. After discharge, the bankruptcy case was subsequently closed.

On September 30, 2002, this office became aware that Mr. Foster had a pre-petition claim against Check Alert Systems, Inc. Immediately, this office proceeded to give notice of the claim to Chapter 7 Trustee, William Romo. The notice sent to the Trustee included proposed amended bankruptcy Schedules B and C. The changes to Schedules B and C were to list the claim and exempt it, so that it would not be part of the estate. This office received no response to the first letter, and

Affidavit of John Ventura, Page 1

on October 11, 2003 a second notice was sent to Trustee, William Romo, again informing him of the claim, and requesting his advice regarding the amended schedules.

On October 14, 2002, after not having received any response from the Trustee, the Amended Schedules B and C were filed in Mr. Foster's bankruptcy case. All creditors were noticed. The filing of the amendments and notices to all creditors allowed anyone with an interest to object to the filing of the amended schedules. No party objected. Notwithstanding, at the time of the filing of the amended schedules, Mr. Foster's bankruptcy case had already been closed.

On April 13, 2004, this firm filed a Motion to Reopen Mr. Foster's Chapter 7 Case to officially make valid the amended Schedules B and C, which were filed October 14, 2002."

Further affiant sayeth naught.



JOHN VENTURA

4-28-2004
_____
Dated

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this 28th day of April 2004, to certify which witness my hand and official seal.

Zulema L. Garza
_____
Notary Public for the State of Texas

Commission Expires: 8/29/06

Zulema L. Garza
Notary Public, State of Texas
My Commission Expires:
AUGUST 29,2006

Affidavit of John Ventura, Page 2