United States District Court
Southern District of Texas
FILED

JUN 3 0 2004

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| WILLIAM FOSTER,<br>**Individually and on behalf of all<br>others similarly situated,** | § § § § | |
| **Plaintiff,** | § § | CIVIL ACTION NO. B-02-196 |
| **vs.** | § § | |
| **CHECK ALERT SYSTEMS, INC.,** | § § § | |
| **Defendant.** | § § | |

---

**CHECK ALERT SYSTEMS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

DAW & RAY, P.C.

By: _____
Keith Wier; TBN: 21436100
Tina Brumbelow; TBN: 24031980
Hibernia Bank Plaza
5718 Westheimer, Suite 1750
Houston, Texas 77057
713/266-3121
713/266-3188 (Fax)

ATTORNEYS FOR DEFENDANT,
CHECK ALERT SYSTEMS, INC.

TO THE HONORABLE COURT:

Defendant, Check Alert Systems, Inc. (hereinafter referred to as "Check Alert" or "Defendant"), files its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure on all claims asserted by Plaintiff, and respectively asks the Court to dismiss Plaintiff's claims against Check Alert. In support thereof, thereof Check Alert would respectfully show unto the Court as follows:

## I. INTRODUCTION

1. Plaintiff filed this suit alleging violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("TDCPA"), including (1) threatening further legal action that Check Alert did not intend to take; (2) threatening to commence criminal charges which it did not plan to initiate; (3) failing to maintain a surety bond as required by § 392.101 of the Texas Finance Code. *See Exh. A, May 24, 2002 Collection Letter; see also Exh. C, Plaintiff's Complaint.* In response to Plaintiff's allegations, Defendant denied any FDCPA and TDCPA violation on its part.

2. Pursuant to FED. R. CIV. PROC. 56(b) & (c), Check Alert moves for Summary Judgment based on no genuine issue of material fact as to at least one of the elements of Plaintiff's cause of action.

3. Check Alert files and serves this Motion for Summary Judgment on Plaintiff at least ten (10) days before the submission and/or oral hearing on this motion.

## II. STANDARD FOR SUMMARY JUDGMENT

4. FED. R. CIV. PROC. 56(c) sets forth the standard for granting summary judgment. Specifically, FED. R. CIV. PROC. 56(c) states in part:

E:\206\082\Pleadings\MSJ.wpd

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. Fed. R. Civ. Proc. 56 (c).

5. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC.56(c); *Cheilitis Corp v. Citrate*, 477 U.S. 317, 322-323; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In addition, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. OlszewskiI*, 102 F.3d 190, 193 (5th Cir. 1996). If the evidence rebutting the motion for summary judgment is only tolerable or not significantly probative, summary judgment should be granted. *Lewis v. Glendale Drilling Co.*, 898 F.2d 1083, 1088 (5th Cir. 1990).

6. The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the non-moving party bears the burden of proof of a trial. Where the moving party has met its Rule 56(c) burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts...[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 476 U.S. 574, 586-87

(1986)(emphasis in original). *See also Taylor v. Principal Financial Group, Inc.*, 93 F.3rd 155, 161

(5th Cir. 1996) (*cert denied*, 117 S. Ct. 586). This is only accomplished by a showing from the non-

movant of "significant probative evidence" that there is an issue of material fact so as to warrant a

trial. *Taylor v. Principle Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir. 1996), *cert. denied*, 117

S.Ct. 586 (1996). The non-movant's burden is to produce evidence "sufficient to support a jury

verdict." *Morris*, 144 F.3d at 380. Rule 56 mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against the party who fails to make a sufficient showing of the

existence of an element essential to the party's case and on which party will bear the burden at trial.

*See Little*, 37 F.3d at 1075 (*citing Cheilitis*, 477 U.S. at 322).

### III. <u>SUMMARY JUDGMENT EVIDENCE</u>

7.   May 24, 2002 Collection Letter, attached as Exhibit "A."

8.   Copy of the Dishonored Check, dated February 18, 2002, attached as Exhibit "B."

9.   Plaintiff's Complaint, dated October 11, 2002, attached as Exhibit "C."

10.   Plaintiff's Motion for Class Certification, dated January 13, 2004, attached as Exhibit "D."

11.   Excerpts from the deposition of William Foster, taken in this matter on February 26, 2004, attached as Exhibit "E," and referred to herein as "Foster Deposition."

12.   Texas Penal Code § 32.41 & §12.22, attached as Exhibit "F."

13.   Michigan Penal Code § 750.131, attached as Exhibit "G."

14.   Defendant also relies on and incorporates herein the pleadings and evidence on file in this matter with the Court.

## IV.  FACTS

15.   The undisputed facts are as follows:  Defendant, Check Alert was hired by Martin's Supermarket to collect the outstanding debt of Plaintiff for his dishonored check.  *See Exhs. A and B.*  Accordingly, Defendant attempted to collect that debt though several correspondences including the collection letter dated May 24, 2002 (hereinafter referred to as "letter").  *See Exh. A.*

16.   As a result of Defendant's collection efforts, Plaintiff asserts the May 24, 2002 Collection Letter violated the FDCPA and TDCPA.  *See Exh. C.*  However, Defendant denies the letter: (1) violates the FDCPA and/or the TDCPA; and (2) threatens further legal action and the commencement of criminal charges as alleged by Plaintiff.  In fact, as explained hereinafter, Courts have found the language utilized in the letter to be permissible and not in violation of the FDCPA.

17.   Plaintiff alleges Defendant violated the FDCPA and the TDCPA because Defendant allegedly utilized routine, abusive, deceptive, and unfair practices that are damaging to Plaintiff and many consumers.  More specifically, Plaintiff alleges Defendant violated the FDCPA and TDCPA by engaging in a variety of illegal practices in collecting debt, by using letters similar to the one dated May 24, 2003, sent to William Foster.  Plaintiff alleges Defendant represented the  following in the letter:

      a)      That if William Foster did not contact Check Alert to resolve the matter, it would take further legal action to collect a debt when it did not plan to do so and did not in fact do so; and

      b)      That under State Law, Check Alert could commence criminal charges against the debtor, when it did not plan to do so and did not in fact do so.

18.   Plaintiff further asserts Defendant violated the TDCPA because it did not maintain a surety bond as required by § 392.101 of the Texas Finance Code.  Thus, Plaintiff now sues individually and as class representative on the behalf of two consumer classes.  *See Exhs. C and D.*

19.   On behalf of the two consumer classes, Plaintiff seeks declaratory judgment requesting the Court declare Check Alert regularly engages in practices that violate the FDCPA and TDCPA, actual damages, punitive damages, restitution and/or disgorgement of payments received by Check Alert, 1% of Check Alert's net worth, injunctive relief, and statutory damages for alleged violations of the Texas Finance Code, pre and post judgment interest and attorneys' fees. *See Exhs C and D.* Individually, and as a class member, William Foster seeks statutory damages, actual damages, punitive damages, declaratory judgment, injunctive relief, pre and post judgment interest and attorneys' fees. *Id.*

## V.   ARGUMENTS AND AUTHORITIES

**A.**     **The Least Sophisticated Consumer Standard.**

20.   In construing whether the Defendant's actions violate the FDCPA this Court should utilize the "least sophisticated consumer" or "unsophisticated consumer" standard.  In choosing the "least sophisticated debtor" standard, the majority of courts considering this issue have observed that this standard "comports with basic consumer-protection principles" enumerated by the U.S. Court of Appeals for the Second Circuit as follows: "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.  This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *United States v. National Financial Serv., Inc.*, 98 F.3d 131,136 (4th Cir.1996)(quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993).  Thus, although this standard protects naive consumers, it also **"prevents liability for bizarre or idiosyncratic interpretations of collection notices** by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (citing *Clomon*, 988

E:\206\082\Pleadings\MSJ.wpd

6

F.2d at 1319) (emphasis added). The Fifth Circuit has also held that the "unsophisticated consumer" standard can be used in reviewing a third party debt collector's collection notices.

21.  Thus, because the least sophisticated consumer is presumed to have read the letter with care, Plaintiff, a sophisticated consumer[1], is also presumed to have read the letter in its entirety, including the alleged threats and/or objectionable language.  As outlined herein above, Plaintiff asserts Check Alert engaged in two forms of abusive debt collection based upon the May 24, 2002 collection letter. However, even applying the least sophisticated consumer standard, the language of the May 24, 2002 letter does not violate the FDCPA or TDCPA as explained hereinafter.

**B.    The May 24, 2002 collection letter does not violate the FDCPA and/or TDCPA because there is no threat of further legal action or commencement of criminal charges.**

22.  The May 24, 2002 letter contains the following information that is informational and notified the consumer that:

a)    Several unsuccessful attempts have been made to contact the consumer;
b)    Check Alert wants to help the consumer before it recommends further collection effort on the dishonored check; and
c)    The consumer can avoid further collection efforts by paying the amount in full. *See Exh. A.*

23.  Plaintiff has alleged Defendant violated the FDCPA and TDCPA because the collection letter demonstrates abusive debt collection practices.  Specifically, based upon Plaintiff's deposition testimony and Complaint, Defendant believes Plaintiff complains of the following language:

a)    "We are attempting to help you before this dishonored check is recommended for further collection efforts"
b)    "We have advised you that under State Law, the intentional writing of bad checks can be grounds for criminal charges."

---

[1]

Plaintiff has approximately 4-5 ½ years of college education. *See Exh. D, Deposition of William Foster*, page 10, lns 20-25.

E:\206\082\Pleadings\MSJ.wpd

7

c)   "Avoid further action and protect your check writing privileges."

d)   "You can avoid further action being taken by remitting the above amount in full to Check Alert Systems, P.O. Box 818, Cadillac, MI."

24.   Defendant denies the language of the collection letter violated the FDCPA and TDCPA and offers the case law cited below in support of its position.

**1.     The May 24, 2002 collection letter does not threaten further legal action.**

25.   In the May 24, 2002 letter, there is no language suggesting that if Plaintiff did not contact Check Alert to resolve the debt, Check Alert would take further <u>legal</u> action to collect the debt (emphasis added).  Here, because Plaintiff does not reference what portion of the letter indicates further legal action will be taken to collect a debt when they did not intend to do so, Defendant believes Plaintiff is referring to the following sentences:"We are attempting to help you before this dishonored check is recommend for further collection efforts." and "Avoid further action and protect your check writing privileges."  However, based on federal jurisprudence, the use of these words, specifically "Avoid further action" are not held to be a violation of the FDCPA and a collector cannot be completely denied the use of the word "action" because others have used it with reference to a specific judicial process.  *See Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864 (N. Dak. 1981).  Further, the term "action" cannot be interpreted to mean legal action by the least sophisticated consumer, or even to a sophisticated one, by mere use of the term.  *See Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724 (D. Conn 1990) (even where the collection form used the word "legal action", the term "action" could not be interpreted to mean lawsuit by unsophisticated consumer.)  In this case, the passages quoted above do not contain any reference, either directly or indirectly, to a suit, lawsuit, legal action, or litigation.

26. Further, the only "legal reference" in the letter, is the sentence, "We have advised you that under State Law, the intentional writing of bad checks can be grounds for criminal charges." However, there is no indication that further legal action and/or criminal charges would be filed against Plaintiff if they did not contact Defendant to resolve the debt. *See Exh A*. This sentence, as recognized by Plaintiff, is nothing more than an accurate statement of law advising Plaintiff that it is a violation of state law to intentionally write a bad check. *See Exh E*, pg 43, ls 13-18; pg 44, ls 8-24; *see also* pg 39, ls 1-25. Moreover, noting that it can be grounds for criminal charges to intentionally write bad checks under State Law does not violate the FDCPA. *See Page v. Checkrite, Ltd*, CV82-L-317 (D. Neb. 1984) (noting the bad check can be pursued under State Law is not a violation of the FDCPA).

27. In fact, the collection letter in this case was informational, notifying the consumer that failure to pay could result in further collection activity and affect his check writing privileges. Thus, the least sophisticated consumer would construe that notice as a prudential reminder and not a threat of legal action. *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir.1996) (collection letter construed as a prudential reminder). Defendant did not threaten or imply that Plaintiff would suffer further legal action or commence criminal charges. Instead, Defendant clearly informed the debtor that if he paid the debt in full, it would cease further collection activity.

28. Therefore, even the least sophisticated consumer, who is able to read, and is presumed to have read the notices received with some caution, would be able to determine from a cursory review of the correspondence that there is no threat of further legal action or the commencement of criminal charges. Simply put, there is no assertion in the letter that further legal action would be taken or that criminal charges would be commenced against Plaintiff or others similarly situated.

E:\206\082\Pleadings\MSJ.wpd

Thus, Check Alert has complied with the requirements of the FDCPA and TCDPA and Plaintiff's claim that Check Alert threatened, without intent, to take further legal action is unfounded and unsupported.

**2.    The May 24, 2002 collection letter does not threaten the commencement of criminal charges.**

29.   Plaintiff asserts Defendant represented it could commence criminal charges against the debtor, Plaintiff. However, there is no language in the May 24, 2002 letter indicating Defendant was could, should, or would commence criminal charges against Plaintiff. In fact, as noted above there is no indication that criminal charges would be filed against Plaintiff if he did not contact Defendant to resolve the debt. Thus, Defendant's simple statement that it can be grounds for criminal charges to intentionally write bad checks under State Law does not violate the FDCPA. *See Page v. Checkrite, Ltd*, CV82-L-317 (D. Neb. 1984).

30.   Further, Plaintiff's assertion that the letter violated the FDCPA and TDCPA because Texas law does not allow such criminal charge and that thus, the threat was false is inaccurate and unsupported by Texas law. *See Exh C-F.* Texas law clearly provides for criminal charges for the intentional writing of bad checks. *See Exh F, Tex. Pen. Code §32.41 and §12.22.* In fact, under the Texas Penal Code, criminal prosecution may be commenced against a person who issues a bad check and the offense is punishable by fine and imprisonment. *Id.* Therefore, Plaintiff's assertion that Texas law does not allow for criminal charges is unfounded. *Id.* Thus, any threat, if at all, which Defendant denies, would not be false. *Id.*

31.   Moreover, the letter was sent by Check Alert, a Michigan entity, to Plaintiff, who was a Michigan resident at the time the check was issued and subsequently dishonored, regarding his

dishonored check issued to Martin Supermarket, a Michigan entity. *See Exh D*, pg 11, ls 10-25.

Under Michigan state law, criminal charges can be commenced against a person for the issuance of

a bad check. *See Exh G,* Mich. Pen. Code Ann. §750.131. In fact, a person who intentionally drafts

a "bad" check is subject to criminal charges punishable by fine and imprisonment. *Id.* Therefore,

even if Defendant threatened criminal charges, which it denies, these alleged threats, if any, were not

false. Thus, Defendant did not violate the FDCPA and/or TDCPA.

> **3.    The failure to maintain a surety bond, as required by the Texas Finance Code, does not automatically establish liability against a debt collector. Plaintiff, and other putative class members, must prove actual damages.**

32.    Here, Plaintiff asserts Check Alert violated the TDCPA by engaging in debt collection

without filing the required surety bond. However, the mere fact a debt collector engaged in debt

collection without the required surety bond does not automatically establish liability for which

Plaintiff can recover a minimum penalty. *See Elston v. Resolution Servs., Inc.*, 950 S.W.2d 180 (Tex

App.- Austin -1997, no writ). In fact, Plaintiff, and other putative class members, must prove actual

damages to recover against a debt collector. *Id.* Thus, statutory damages for failure to maintain

surety bond are effectively conditional upon a Plaintiff's recovery of an award of actual damages for

the successful maintenance of the suit under the TDCPA.

## VI. <u>CONCLUSION</u>

33.    The language of the May 24, 2002 collection letter clearly contains informative

information and does not threaten further legal action or the commencement of criminal charges

against Plaintiff. Therefore, Plaintiff cannot meet his burden of proof or raise a genuine issue of

material fact with respect to any prong of its causes of action, including but not limited to his

assertion that Defendant threatened to take "further legal action it did <u>not</u> intend to take" and/or "the

E:\206\082\Pleadings\MSJ.wpd

commencement of criminal charges it did not appear to initiate." Thus, the May 24, 2002 collection letter does not violate federal and/or state law and Defendant is entitled to summary judgment.

34.    Further, because, after adequate time for discovery, Plaintiff has failed to produced any evidence that Check Alert(1) threatened further legal action; 2) threatened the commencement of criminal charges it did not plan to initiate; 3) threatened further legal action it did not intend to take; or 4) threatened to commence criminal charges it did not plan to initiate, there is no genuine issue of material fact as to Plaintiff's allegation that Defendant violated the federal and state law through the use of the letter.

## VII. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant, Check Alert Systems, Inc. asks this Court, for the above reasons, to grant its Motion for Summary Judgment and enter a final summary judgment denying all relief requested in Plaintiff's petition, sign a final judgment that Plaintiff take nothing on his claims, and grant such other relief, both in law and in equity, to which Defendant is justly entitled.

Respectfully submitted,

DAW & RAY,
A Professional Corporation

By:_____
      Keith Wier; TBN: 21436100
      Tina Brumbelow; TBN: 24031890
      Hibernia Bank Plaza
      5718 Westheimer, Suite 1750
      Houston, Texas 77057
      Telephone: (713) 266-3121
      Facsimile: (713) 266-3188

**ATTORNEYS FOR DEFENDANT,
CHECK ALERT SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record and/or parties pursuant to the Federal Rules of Civil Procedure on this the _____ day of June, 2004.

Stephen Gardner
Law Office of Stephen Gardner, PC
6060 North Central Expressway, Suite 560
Dallas, TX 75206

John Ventura
Conrad Bodden
Daniel Whitworth
Richard A. Mlynek
Law Offices of John Ventura, P.C.
62 E. Price Road
Brownsville, Texas 78521

Tina Brumbelow

Cadillac MI 49601-0808

# SYSTEMS, INC.

*Telephone Number (231) 775-3473*

RETURN SERVICE REQUESTED

May 24, 2002

CHECK ALERT SYSTEMS INC
PO Box 808
Cadillac MI 49601-0808

05/24/2002-D7   170083   23295
William L Foster
PO Box 8713
Brownsville TX 78526-8713

Debtor ID # 321590
Total Amount Due: $69.62

---

## Past Due Balance

***Detach Upper Portion And Return With Payment***

| Merchant(s): | Account #: | Chk Amt: | Ser Charge: | Total Amount: |
|---|---|---|---|---|
| Martin's Supermarket/Nil | 321590 | $34.62 | $35.00 | $69.62 |

Total Due: 69.62

## >>>>> NO OTHER WAY TO CONTACT YOU! <<<<<

Check Alert Systems, Inc. has made several attempts to contact you, telephone, or by written notice.

WE ARE ATTEMPTING TO HELP YOU BEFORE THIS DISHONORED CHECK IS RECOMMENDED FOR FURTHER COLLECTION EFFORTS."

We have advised you that under State Law, the intentional writing of bad checks can be grounds for **CRIMINAL CHARGES.**

### AVOID FURTHER ACTION AND PROTECT YOUR CHECKWRITING PRIVILEGES

You can stop any further action being taken by remitting the above amount **IN FULL** to Check Alert Systems, PO Box 808, Cadillac, MI 49601. MAKE YOUR PAYMENT BY CERTIFIED CASHIER'S CHECK OR MONEY ORDER. Checks received as payment will be electronically deposited.

This communication is from a collection agency. This is an attempt to collect a debt and all information obtained will be used for that purpose.

3RDCLKT10D7

EXHIBIT NO. 2

POCKRUS REPORTING SERVICE

EXHIBIT

A

CHECK ALERT SYSTEMS, INC. • 7597 S Mackinaw Trail Suite C • Cadillac MI 49601 • (800) 968-2282

Account #: 321590









IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 1 1 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| William Foster, | § | |
|     Individually and on behalf of all | § | |
|     others similarly situated, | § | |
| | § | |
|     Plaintiffs, | § | Civil Action No. B-02-196 |
| | § | |
| vs. | § | |
| | § | |
| Check Alert Systems, Inc. | § | |
| | § | Jury Demanded |
|     Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff William Foster ("Plaintiff") complains of Check Alert Systems, Inc., ("Defendant"), by way of a class action, and shows the Court the following:

#### Introduction

1. This is an individual and class action for damages and injunctive relief for Check Alert Systems, Inc.'s violations of the Fair Debt Collection Practices Act, 15 U.S.C. Sectn. 1692 *et seq.* ("FDCPA") and the Texas Debt Collection Practices Act, Texas Finance Code Chapter 392 ("Texas Act"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

2. William Foster brings this class action on behalf of himself and on behalf of all other consumers who are similarly situated, seeking declaratory relief, money damages, restitution, and a preliminary and permanent injunction forcing Check Alert Systems, Inc. to stop its illegal practices.

#### Jurisdiction and Venue

**EXHIBIT**
C

3.  Jurisdiction of this Court arises under 15 U.S.C. Section 1692k(d) and 28 U.S.C. Section 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. Section 1367(a).

4.  Venue is proper in the Southern District of Texas, Brownsville Division, under 28 U.S.C. Section 1391(b)(2) and (c) in that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Texas. Specifically, Check Alert Systems, Inc. conducted collection efforts in Brownsville, Texas by sending a debt collection letter to William Foster's residence located in Brownsville, Texas.

### Parties

5.  William Foster is an individual residing in Brownsville, Cameron County, Texas. William Foster and each of the other members of the class are "consumers" as defined in FDCPA and the Texas Act.

6.  Check Alert Systems, Inc. is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation, and may be served with process by serving its President, Daire Rendon at 7597 Mackinaw Trail, Suite C in Cadillac, Michigan 49601.  Check Alert Systems, Inc. is a "debt collector" as defined by FDCPA and the Texas Act.

### Class Action Allegations

7.  William Foster sues on his own behalf and, as class representative, sues on behalf of (1) Class 1–all consumers in the United States who have been the victims of the illegal acts of Defendant that violated the FDCPA, beginning one year prior to the date this Complaint is filed, and (2) Class 2–all consumers residing in Texas who have been victims of the illegal acts of Defendant that

violated the Texas Act, beginning two years prior to the date this Complaint is filed. Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint is filed are also members of Class 1.

8. William Foster brings this lawsuit as a class action because, on information and belief (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) his claims are typical of the claims of the class, and (4) he can and will fairly and adequately protect the interests of the class. Questions of whether, and to what extent, Defendant engaged in the practices described herein, whether it did so intentionally or knowingly, and whether it thereby violated the law will be common to all members of the class.

9. The questions of law and fact common to the members of the class predominate over questions affecting only individual members. The prosecution of individual actions by or against class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendant.

10. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. It is appropriate to maintain this lawsuit as a class action because Defendant acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole.

11. William Foster's claims are typical of the claims of the class as a whole. He can and will fairly and adequately protect the interests of the class, because he has retained experienced counsel to represent the class, he has no conflict of interest with the class, and he brings this lawsuit specifically for the protection of the consumers who have been and will be defrauded by these practices, and not solely to recover his personal damages.

### Acts of Agents

12.  Whenever in this Complaint it is alleged that Defendant did any act, it is meant that Defendant performed or participated in the act, or the officers, agents, or employees of Defendant performed or participated in the act on behalf of and under the actual, vicarious, or apparent authority of Defendant.

### Conditions Precedent

13.  All conditions precedent to the filing of this case have been performed, have occurred, or have been satisfied.

### Facts

14.  In collecting debts, Check Alert Systems, Inc. engaged in a variety of illegal acts and practices in collecting debts, using letters similar to one dated May 24, 2002, that it sent to William Foster.   The illegal acts and practices made in that letter included the following:

   a.      Check Alert Systems, Inc. represented that if William Foster did not contact it to resolve the matter, it would take further legal action to collect a debt when, on information and belief, it did not plan to do so and did not in fact do so.

   b.      Check Alert Systems, Inc. represented that under State Law, it could commence criminal charges against the debtor, when on information and belief, it did not plan to do so and did not in fact do so.

### First Cause of Action

### Request for Declaratory Relief

15.  Plaintiff seeks a declaratory judgment from this Court pursuant to 28 U.S.C. Sections 2201 and 2202, declaring that Check Alert Systems, Inc. regularly engages in the practices described

---

herein and that these practices violate the FDCPA and the Texas Act.

## Second Cause of Action

### Request for Relief Pursuant to FDCPA for Class 1

16. By the actions set forth above, Check Alert Systems, Inc. violated the FDCPA as to the members of Class 1.

17. As a result of its violations of the FDCPA, Check Alert Systems, Inc. is liable to Plaintiff for his actual damages, statutory damages, and costs and reasonable attorneys' fees. The conduct of Check Alert Systems, Inc. described above has made it necessary for Plaintiff to retain the services of the attorneys whose names are subscribed to this petition. Plaintiff is therefore entitled to recover from Check Alert Systems, Inc. additional sums to compensate the Plaintiff for attorneys' services in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

18. On behalf of himself and each class member, Plaintiff seeks an order of the Court directing Check Alert Systems, Inc. to pay actual damages to all class members consisting of all money obtained by Check Alert Systems, Inc. through the threat of any illegal acts in violation of FDCPA.

19. In addition, Plaintiff seeks on behalf of all other class members, without regard to minimum individual recovery, an award in the amount of the lesser of $500,000.00 or 1% of the net worth of Check Alert Systems, Inc., and reasonable attorneys' fees.

## Third Cause of Action

### Request Relief Pursuant to the Texas Debt Collection Act and the Texas Deceptive

### Trade Practices Act for Class 2

20. By the actions set forth above, Check Alert Systems, Inc. violated the Texas Act as to the members of Class 2. A violation of the Texas Act is also a violation of the Texas Deceptive Trade Practices Act, and Plaintiff seeks recovery under that act as well.

21. In addition, Check Alert Systems, Inc. did not maintain a surety bond as required by Section 392.101 of the Texas Finance Code. By this action, Check Alert Systems, Inc. violated the Texas Act as to members of Class 2.

22. As a result of its violations of the Texas Act, Check Alert Systems, Inc. is liable to Plaintiff for his actual damages, disgorgement of any monies paid to Check Alert Systems, Inc., statutory damages, and costs and reasonable attorneys' fees. The conduct of Check Alert Systems, Inc. as described above has made it necessary for Plaintiff to retain the services of the attorneys whose names are subscribed to this petition. Plaintiff is therefore entitled to recover from Check Alert Systems, Inc. additional sums to compensate the Plaintiff for attorneys' services in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

23. On behalf of himself and each class member, Plaintiff seeks an order of the Court directing Check Alert Systems, Inc. to restore to all class members all money obtained by Check Alert Systems, Inc. through the threat of any other illegal acts in violation of the Texas Act and the Texas Deceptive Trade Practices Act.

**Demand for Jury Trial**

24. Please take notice that Plaintiff demands trial by jury in this action.

**Prayer**

THEREFORE, Plaintiff respectfully prays that this Court:

1.  Upon notice and hearing, but at the earliest practicable date, certify this action as a class action.

2.  Upon final trial of this cause, enter a Declaratory Judgment declaring that the practices complained of herein are illegal and a Permanent Injunction enjoining Check Alert Systems, Inc. from engaging in the illegal practices set forth herein.

3.  Upon final trial of this cause, award Plaintiff and the members of the class judgment for their damages and statutory civil penalties as set forth herein. Plaintiff further prays that these damages be multiplied pursuant to the provisions of the law.

4.  Award punitive damages in an amount necessary to punish Check Alert Systems, Inc. for its conduct.

5.  Award Plaintiff and the class attorneys' fees and costs of court.

6.  Award pre-judgment and post-judgment interest at the maximum rate permitted at law or at equity.

7.  Grant Plaintiff and the class all other relief to which they may show themselves and the class entitled.


Respectfully Submitted,
**Law Office of Stephen Gardner, PC**


Stephen Gardner
Federal Id No. 16111
Texas Bar No. 07660600
1845 Woodall Rodgers Freeway, Ste. 1750
Dallas, Texas 75201
Telephone:     (214) 954-0663
Telecopier:     (214) 871-8957


John Ventura
Federal Id No. 1646
Texas State Bar Number 20545700
Conrad Bodden
Federal Id No. 21003
Texas Bar No. 00796220

---

Daniel Whitworth
Federal Id No. 23119
Texas Bar No. 24008275
Law Offices of John Ventura, P.C.
62 E. Price Road
Brownsville, Texas 78521
Telephone:    (956) 546-9398
Telecopier:    (956) 542-1478
**Counsel for Plaintiffs and the Class**



1-13-04

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**William Foster,** §
Individually and on behalf of all §
others similarly situated, §
§
Plaintiff, §
§
vs. §                                       Civil Action B-02-196
§
**Check Alert Systems, Inc.,** §                                       Jury Demanded
§
Defendant. §

### Motion for Class Certification, and Brief in Support

Willaim Foster ("Foster" or "Plaintiff") moves to certify this case as a class action against **Check Alert Systems, Inc.** ("Check Alert" or "Defendant").

### Introduction

This is an individual and class action seeking damages and injunctive relief from Defendant for their violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, TEX. FIN. CODE Ch. 392 ("Texas DCPA"), both of which prohibit debt collectors from engaging in abusive, deceptive, and unfair practices. Foster brought this case as a class action because Defendant's practices are routine and damage many consumer debtors in addition to himself.

Foster, sues on his own behalf and, as class representative, sues on behalf of two classes of consumers:

**Class 1.**     All consumers in the United States who have been the victims of the illegal acts of Defendant that violated the FDCPA, beginning October 11, 2001 (one year prior to the date the Complaint was filed) and continuing to the present.

**Motion for Class Certification, and Brief in Support**, page 1

**EXHIBIT**

D

**Class 2.**    All consumers residing in Texas who have been victims of the illegal acts of Defendant that violated the Texas Act, beginning October 11, 2000 (two years prior to the date the Complaint was filed) and continuing to the present.. Class 2 consumers who were the victims of Defendant's acts beginning one year prior to the date this Complaint was filed are also members of Class 1.

Foster seeks declaratory relief, money damages, restitution, and a permanent injunction forcing Check Alert to stop its illegal practices.

### Facts

In determining whether a class will be certified, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (quoting *Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

The merits of the case are not examined and the substantive allegations of the complaint should generally be taken as true. *Eisen v. Carlisle & Jacquelin, supra* at 177.

Nonetheless, to allow the Court to determine the nature of the dispute, Foster provides the following facts taken from his Complaint.

1.    William Foster is an individual residing in Brownsville, Cameron County, Texas.

2.    Foster and each of the other members of the class are "consumers" as defined in FDCPA and the Texas Act.

3.    Check Alert Systems, Inc. is an out-of-state corporation engaged in the business of collecting debts in this judicial district and elsewhere in the state and nation.

4.    Check Alert is a "debt collector" as defined by FDCPA and the Texas Act.

**Motion for Class Certification, and Brief in Support,** page 2

5.    Check Alert engaged in collection efforts in Brownsville, Cameron County, Texas by sending a debt collection letter to Foster's address in Brownsville, Texas.

6.    In collecting debts, Check Alert engaged in a variety of illegal acts and practices in collecting debts, using letters similar to the one dated May 24, 2002, that it sent to William Foster.

7.    Check Alert Systems, Inc. represented that if William Foster did not contact it to resolve the matter, it would take further legal action to collect a debt when it did not plan to do so and did not in fact do so.

8.    Check Alert Systems, Inc. represented that under State Law, it could commence criminal charges against the debtor, when it did not plan to do so and did not in fact do so.

9.    Check Alert Systems, Inc. did not maintain a surety bond as required by Section 392.101 of the Texas Finance Code.

### Relief Sought

Foster seeks a declaratory judgment from this Court pursuant to 28 U.S.C. Sections 2201 and 2202, declaring that Check Alert Systems, Inc. regularly engages in the practices described herein and that these practices violate the FDCPA and the Texas Act.

As to Defendant's violations of the FDCPA against him individually, Foster seeks $1,000.00 statutory damages, as provided by the FDCPA, 15 U.S.C. § 1692k(a).

As to members of Class 1, Foster seeks actual damages of all Class 1 members consisting of all money obtained from them by Defendant, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1).

**Motion for Class Certification, and Brief in Support,** page 3

As to members of Class 1, Foster seeks in addition, without regard to minimum individual recovery, an award in the amount of 1 % of Defendant's net worth, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(2)(B).

As to the members of Class 2, pursuant to the Texas DCPA, TEX. FIN. CODE § 392.403(a) & (e), Foster seeks an order of the Court directing Check Alert Systems, Inc. to restore to all class members all money obtained by Check Alert Systems, Inc. through the threat of any other illegal acts in violation of the Texas Act and the Texas Deceptive Trade Practices Act, plus statutory damages of $100.00 per violation.

Foster seeks a permanent injunction prohibiting Defendant from engaging in the illegal practices set forth above.

Foster also seeks attorneys' fees and costs, as provided by the FDCPA, 15 U.S.C. § 1692k(a)(1), and the Texas DCPA, TEX. FIN. CODE § 392.403(b).

### The Applicable Law

The most widely used test used for analysis of debt collection abuse claims is the least sophisticated consumer standard. "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin Landry, deLaunay and Durand,* 103 F.3d 1232, 1236 (5th Cir. 1997).

Violations of both the FDCPA and the Texas DCPA should be evaluated from the perspective of the least sophisticated consumer. However, even from the perspective of the most educated, distrustful, and sophisticated consumer, Defendant's practices are illegal.

Foster has demonstrated that Defendant engaged in the three forms of abusive debt collection.

**Motion for Class Certification, and Brief in Support,** page 4

**First, in its form collection letters,** Defendant represented that if the consumers did not contact it to resolve the matter, it would take further legal action to collect a debt when it did not plan to do so and did not in fact do so. This violates the FDCPA, which provides in pertinent part that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

15 U.S.C. § 1692k(3).

> This practice also violates the Texas DCPA, which provides in pertinent part that:

> Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices: . . . (8) misrepresenting the character, extent, or amount of a consumer debt, or *misrepresenting the consumer debt's status in a judicial or governmental proceeding.*

Tex. Fin. Code § 392.304(a) [emphases added].

**Second, in those same letters,** Defendant represented that it could commence criminal charges against the debtor, although it did not plan to do so and did not in fact do so. Because Texas law does not allow such criminal charges, this threat was false. This violates the same sections of the FDCPA and the Texas DCPA discussed above.

**Third, Check Alert violated the Texas Act by engaging in debt collection without filing the required bond.** Finance Code § 392.101 provides: "A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section. A copy of the bond must be filed with the secretary of state." Violation of this requirement Finance Code

Motion for Class Certification, and Brief in Support, page 5

allows Foster and the class to recover "not less than $100 for each violation." § 392.403(e).

These actions establish liability as a matter of law. Whether Foster or any other class member was misled is not an element of this cause of action. "The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 392 (D.Del. 1991). Similarly, there is no issue of intent, bad faith or negligence. "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

### Grounds for Certification

Foster brought this lawsuit as a class action because (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) his claims are typical of the claims of the class, and (4) he can and will fairly and adequately protect the interests of the class. All four criteria of Rule 23(a) and at least one of the criteria of Rule 23(b) must be met for the case to be certified as a class action. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Foster bears the burden of establishing these requirements. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. Numerous FDCPA cases have been certified as class actions. *Keele v. Wexler*, 149 F.3d 589 (7th Cir, 1998); *Cope v. Duggins*, 2000 U.S. Dist. Lexis 5081 (E.D.La., April 13, 2000); *Woodard v. Online Information Services*, 191 F.R.D. 502 (E.D.N.C. 2000); *Talbott v. GC Services*; 191 F.R.D. 99 (W.D.Va. 2000); *Swanson v. Mid Am, Inc.*, 186

F.R.D. 665 (M.D.Fla. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz. 1999);

*Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Borcherding-Dittloff v. Transworld*

*Systems, Inc.*, 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.*, 186

F.R.D. 589 (E.D.Cal. 1999); *West v. Costen*, 558 F.Supp. 564, 572-573 (W.D.Va. 1983); *Che-*

*qnet Systems, Inc. V. Montgomery*, 911 S.W.2d 956 (Ark. 1995); *D_Alauro v. GC Services*

*Ltd, Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); *Stewart v. Slaughter*, 165 F.R.D. 696

(M.D.Ga. 1996); *Gammon v. GC Services*, 162 F.R.D. 313 (N.D.Ill. 1995); *Duran v. Bureau of*

*Yuma, Inc.*, 93 F.R.D. 607 (D.Ariz. 1982).

In this case, Foster has established that all four Rule 23(a) criteria exist and that

the case should be certified both under Rule 23(b)(2) and 23(b)(3). Foster will discuss

each criterion in turn.

### Numerosity — Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members

is impracticable." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F. 2d 1030, 1038 (5th Cir.

1981). However, "[i]mpracticable does not mean impossible." *Rabidoux v. Celani*, 987

F.2d 931, 935 (2d Cir. 1993). "When the class is large, numbers alone are dispositive . . .

." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers 25

or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectar-*

*ian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Armstead v. Pingree*, 629 F.

Supp. 273, 279 (M.D.Fla. 1986) (25 sufficient); *Beasley v. Blatt*, 1994 WL 362185 (N.D.Ill.

1994)(24 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th

Cir. 1969) (40 sufficient); *Riordan v. Smith Barney*, supra, 113 F.R.D. 60, 62 (N.D.Ill. 1986)

(10-29 sufficient); *Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D.Pa.

1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D.Ill.

1992) (about 70).

**Motion for Class Certification, and Brief in Support**, page 7

"A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

In discovery, Defendant admitted that—just for the one-year period May 25, 2001-May 24, 2002—it mailed debt collection letters in the form sent to Foster to approximately 14,878 debtors nationwide, of which 34 were mailed to consumers with a Texas address.

Foster has satisfied the numerosity requirement.

### Commonality — Rule 23(a)(2)

Rule 23(a)(2) requires that there be a common question of law or fact and that "resolution of common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F. 2d 468, 472 (5th Cir. 1986).

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of fact is present where the defendant has engaged in similar conduct, i.e.- sending a form collection letter to the class members. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Not all factual or legal questions raised in the litigation need be

common so long as at least one issue is common to all class members. *Cope v. Duggins,* 2000 U.S. Dist. LEXIS 5081, *9 (E.D.La, April 14, 2000); *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56-57 (3d Cir. 1994). "A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornburg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984); See also *Keele v. Wexler,* supra

"To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter." *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D.Fla. 1999).

Foster has done that. Commonality is clear.

### Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that Foster's claims be typical of the claims of the class. *Jenkins v. Raymark Industries, Inc.,* 782 F. 2d 468, 472 (5th Cir. 1986).

Foster's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted); see also, *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598-600 (2d Cir. 1986); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

In this case, typicality is inherent in the class definition — each class member received the same or similar letters and thus was subjected to the same violations as Foster. Foster's claims are typical of the claims of the class as a whole.

**Motion for Class Certification, and Brief in Support,** page 9

### Adequacy — Rule 23(a)(4)

There are two criteria for determining adequacy under Rule 23(a)(4):

(1) The named representatives must have a common interest with the unnamed members of the class, and there must be an absence of conflict or antagonism between the interests of the named plaintiffs and the other members of the proposed class, and

(2) It must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims.

*Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1974).

Foster's interest is identical to the other class members. He has by his actions shown that there is no antagonism between his interests and those of the absent class members.

Foster has retained experienced counsel to represent the class.

Plaintiffs' lead counsel Stephen Gardner is a nationally-recognized consumer protection expert who has handled class action and related cases of similar and greater magnitude for many years. Currently, he is in private practice in Dallas, Texas, and also serves Of Counsel to the National Consumer Law Center in Boston. From 1992-1995, Mr. Gardner was Assistant Dean of Clinical Education and visiting assistant professor of law at Southern Methodist University. He was formerly an assistant attorney general in Texas and New York, from 1982 until 1991, involved in major consumer-protection initiatives against such companies as AAMCO, Mobil Oil, Kellogg Company, and TCI Cable. Mr. Gardner's major publications include: H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) (contributing editor); CONSUMER CLASS ACTIONS, National Consumer Law Center (contributing author); THE PRACTICE OF CONSUMER LAW, National Consumer Law Center (author); UNFAIR AND DECEPTIVE ACTS AND PRACTICES, National Consumer Law Center (contributing author); LOST IN THE SUPERMARKET: CONSUMER CONFUSION AND MARKETING MANIA, NUTRITION LABELING HANDBOOK 1995;

**Motion for Class Certification, and Brief in Support,** page 10

SEE DICK AND JANE SUE: A PRIMER ON STATE CONSUMER PROTECTION LAWS, American Law Institute 1992; and HOW GREEN WERE MY VALUES: REGULATION OF ENVIRONMENTAL MARKETING CLAIMS, Toledo Law Review 1991. He is Board Certified as a Civil Trial Specialist by the Texas Board of Legal Specialization. Among other positions, Mr. Gardner has served as a member of the Board of Directors, of Consumers Union of U.S., Inc. (the publisher of Consumer Reports magazine), 1997-2000; a member of the Board of Directors of the National Association of Consumer Advocates, 1996-2002 (current chair emeritus); and a member of the Consumer Advisory Council of the Federal Reserve Board of Governors, 1986-1989.

Plaintiffs' counsel John Ventura is a nationally-recognized bankruptcy and consumer protection attorney who has handled class action and related cases for years. Currently, he is the Owner of the Law Offices of John Ventura, P.C. with the main office in Brownsville, Texas, an office in Harlingen, Texas and an office in McAllen, Texas. Mr. Ventura is a member of the Consumer Bankruptcy Committee; E-File Committee; Advertisement Review Board for the State Bar of Texas; Member of Consumer Law Council. He has also served as Past President of the Rio Grande Valley Bankruptcy Bar Association, Past Vice-President of the Rio Grande Valley Bankruptcy Bar Association; and Coordinator of the agenda and speakers for the Annual Advanced Bankruptcy Seminar. In addition, Mr. Ventura has authored the following books: THE BANKRUPTCY KIT; THE CREDIT REPAIR KIT; FRESH START: BEATING THE PAYCHECK TO PAYCHECK BLUES; THE SMALL BUSINESS SURVIVAL KIT;, THE WILL KIT; and EVERYTHING YOUR HEIRS NEED TO KNOW, as well as LAW FOR DUMMIES, DIVORCE FOR DUMMIES, the LAW KIT FOR DUMMIES, and GOOD ADVICE FOR A BAD ECONOMY. He has also been a guest on CNN, CNNFN, Bloomberg Television & Radio, The Fox News Channel, National Public Radio, Business Talk Radio, and numerous local radio and television programs around the country.

Richard A. Mlynek is an experienced litigation attorney who worked for a large civil litigation law firm in Corpus Christi and Houston from 1998-2003 before joining the Law Offices of John Ventura, P.C. this year. Prior to becoming an attorney, Mr. Mlynek worked as a claims adjuster handling property damage and personal injury claims. Mr. Mlynek's practice is now concentrated on consumer and personal injury litigation. Mr. Mlynek is the co-director of the litigation department for the Law Offices of John Ventura, P.C.

The adequacy of both Foster and his counsel is clear.

### Rule 23(b)(2) — Injunctive and Declaratory Relief

Rule 23(b)(2) requires Foster to show only that Defendant acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole. *Harik v. California Teachers Ass'n*, 298 F.3d 863, 873 (9th Cir. 2002). The facts are that the entire class of consumers to be represented by Foster was treated in exactly the same way, as a matter of the proposed class definition.

Defendant sent illegal collection letters to all class members. A pattern of activity that is likely to be the same for all class members is all that is required. *Baby Neal v. Casey*, 43 F.3d 48, 63-64 (3rd Cir. 1994).

Because Texas law allows for injunctive relief, and because Foster also seeks a declaration that Defendant violated the FDCPA, it is proper to certify this case for injunctive and declaratory relief. Because Defendant also damaged Foster and other class members, it is appropriate to certify a damages class as well, under Rule 23(b)(30, as discussed in the next section.

### Rule 23(b)(3) — Predominance

Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *In re Plywood Anti-Trust Litigation,* 76 F.R.D. 570, 582 (E.D.La. 1976).

"Predominance is a test readily met in certain cases alleging consumer . . . fraud. . . ." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S. Ct. 2231, 2249, 2250, 138 L. Ed. 2d 689 (1997) (citations omitted).

Predominance exists when there is an essential common factual link between all class members and the Defendant for which the law provides a remedy. *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, (9th Cir. 1996).

In this case, the common link is that all class members, by definition, were subjected to Defendant's practice of sending letters that violate both the FDCPA and the Texas DCPA.

Where Defendant has standardized practices that impact the defined class as a whole, common issues of fact or law predominate over individual questions. *Walton v. Franklin Collection Agency, Inc.,* 190 F.R.D. 404 (N.D.Miss. 2000); *Cope v. Duggins,* supra; *In re Catfish Antitrust Litig.,* 826 F. Supp. 1019 (N.D.Miss. 1993).

Here, the only individual issues for trial will be (1) identification of the consumers who were subject to Defendant's collection attempts and (2) determination of the amounts collected from those individual consumers by Defendant, both capable of determination from Defendant's records, after certification. This is not the kind of problem that is a barrier to class certification. *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 678 (N.D.Ill. 1989).

The questions of law and fact common to the members of the class predominate over questions affecting only individual members.

### Rule 23(b)(3) — Superiority

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fair and efficient adjudication of the controversy." *Jenkins v. Raymark Industries, Inc.*, supra at 472. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Gete v. I.N.S.*, 121 F.3d 1285, 1299 (9th Cir. 1997); *Neely v. Ethicon, Inc.*, 2001 U.S. Dist. LEXIS 15599, *38 (E.D.Tex. Aug. 16, 2001).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D.Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974)

In this case there is no better method available for the adjudication of the claims that might be brought by each individual debtor subjected to Defendant's practice. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990). Class actions are a more efficient and consistent means of trying the legality of a collection letter. *Irwin v. Mascott*, 186 F.Supp.2d 567 (N.D.Cal. 1999); *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 600 (E.D.Cal. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996); also see *Newberg on Class Actions*, §21.14 (3d ed. 1992).

The efficacy of consumer class actions is recognized particularly where the individual's claim is small, as is the case here. As the U.S. Supreme Court held:

**Motion for Class Certification, and Brief in Support**, page 14

While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Kaplan, Predatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:

"The policy at the very core of the class action mechanism is to overcome the problems that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997).

*Amchem Products, Inc. v. Windsor, supra* at 117 S.Ct. at 2246.

Class certification of an action for abusive debt collection practices provides an efficient and appropriate resolution of the controversy. *Keele v. Wexler,* 149 F.3d 589 (7th Cir, 1998); *Irwin v. Mascott,* 186 F.Supp.2d 567 (N.D.Cal. 1999); *Brink v. First Credit Resources,* 185 F.R.D. 567 (D.Ariz. 1999); *Borcherding-Dittloff v. Transworld Systems, Inc.,* 185 F.R.D 558 (W.D.Wis. 1999); *Ballard v. Equifax Check Services, Inc.,* 186 F.R.D. 589 (E.D.Cal. 1999); *Cheqnet Systems, Inc. v. Montgomery,* 911 S.W.2d 956 (Ark. 1995).

A class action is therefore superior to other available methods for the fair and efficient adjudication of the controversy.

## Prayer

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this action as a class action.

Respectfully submitted,

**John Ventura**
Federal ID No. 1646
State Bar No. 20545700
**Richard A. Mlynek**
Federal ID No. 23125
State Bar No. 24007689
**Law Offices of John Ventura, PC**
62 East Price Road
Brownsville, Texas 78521
Telephone: (956) 546-9398
Telecopier: (956) 542-1478

**Stephen Gardner**
Federal ID No. 16111
State Bar No. 07660600
**Law Office of Stephen Gardner, PC**
6060 North Central Expy., Ste. 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Telecopier: (214) 800-2834

Counsel for Plaintiff and the Class

By: _____

Stephen Gardner

## Certificate of Service

On January 13, 2004, a true and correct copy of the foregoing was sent by United States Mail, in compliance with the Rules of Civil Procedure, to:

Keith Wier/Tina Brumbelow
Day & Ray
5718 Westheimer, Ste. 1750
Houston Texas 77057

_____

Stephen Gardner

**Motion for Class Certification, and Brief in Support**, page 16

Respectfully submitted,

**John Ventura**
Federal ID No. 1646
State Bar No. 20545700
**Richard A. Mlynek**
Federal ID No. 23125
State Bar No. 24007689
**Law Offices of John Ventura, PC**
62 East Price Road
Brownsville, Texas 78521
Telephone: (956) 546-9398
Telecopier: (956) 542-1478

**Stephen Gardner**
Federal ID No. 16111
State Bar No. 07660600
**Law Office of Stephen Gardner, PC**
6060 North Central Expy., Ste. 560
Dallas, Texas 75206
Telephone: (214) 800-2830
Telecopier: (214) 800-2834

Counsel for Plaintiff and the Class

By: _____
Stephen Gardner

### Certificate of Conference

On January 12, 2004, I conferred with Keith Wier about this motion. Defendant does not agree to certification.

_____
Stephen Gardner

### Certificate of Service

On January 13, 2004, a true and correct copy of the foregoing was sent by United States Mail, in compliance with the Rules of Civil Procedure, to:

Keith Wier / Tina Brumbelow
Day & Ray
5718 Westheimer, Ste. 1750
Houston, Texas 77057

_____
Stephen Gardner

**Motion for Class Certification, and Brief in Support**, page 16

Page 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

WILLIAM FOSTER, Individually )
and on behalf of all others )
similarly situated, )
                             )
                             ) CIVIL ACTION NO: B-02-196
                             )
CHECK ALERT SYSTEMS, INC.    )

***************************************

ORAL DEPOSITION OF

WILLIAM LEE FOSTER

FEBRUARY 26, 2004

VOLUME 1

***************************************

ORAL DEPOSITION of WILLIAM LEE FOSTER, produced
as a witness at the instance of the Defendant, and duly
sworn, was taken in the above-styled and numbered cause
on the 26th day of February, 2004, from 3:00 p.m. to 4:52
p.m., before JUDITH GARRETT HENNIGH, CSR in and for the
State of Texas, reported by oral stenography, at the
offices of John Ventura, P.C., 62 East Price Road,
Brownsville, Texas, pursuant to the Federal Rules of
Civil Procedure and the provisions stated on the record
or attached hereto.

---

1       T A B L E   O F   C O N T E N T S

2                                          PAGE

3  Agreements of Counsel . . . . . . . . . . . . . . . .  4

4

5  Examination of WILLIAM LEE FOSTER

6      By Mr. Wier  . . . . . . . . . . . . . . . . . .  6

7

8  REPORTER'S CERTIFICATION  . . . . . . . . . . . . . . 82

9  FILING CERTIFICATION  . . . . . . . . . . . . . . . . 84

10 CHANGES AND SIGNATURE . . . . . . . . . . . . . . . . 87

11 WITNESS' SIGNATURE CERTIFICATE  . . . . . . . . . . . 88

12

13 OBJECTIONS

14     By Mr. Mlynek  . 44, 45, 59, 62, 68, 70, 76, 77, 78

15

16 EXHIBITS

17

18 NO. DESCRIPTION                         MK'D  ID'D

19 1   Check to Martin's Foods                   27

20 2   5/24/02 Letter from Check Alert Systems   27

21 3   Plaintiff's Original Complaint            60

22 4   Bankruptcy Petition                       65

23 5   List of creditors                         67

24

---

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFF:

    RICHARD A. MLYNEK
    LAW OFFICES OF JOHN VENTURA, P.C.
    62 EAST PRICE ROAD
    BROWNSVILLE, TEXAS 78521

FOR THE DEFENDANT:

    KEITH WIER
    DAW & RAY, P.C.
    COASTAL BANC PLAZA
    5718 WESTHEIMER, SUITE 1750
    HOUSTON, TEXAS 77057

ALSO PRESENT:

    Ms. Judith Garrett Hennigh, CSR



EXHIBIT
E

---

Page 4

1           A G R E E M E N T S

2           It was agreed by and between counsel for the

3   Plaintiff and Defendant that no objections need be made

4   by any party at the time of taking said deposition,

5   except objections as to the form of the question or the

6   responsiveness of the answer, which if not made during

7   the deposition are waived; but if and when said

8   deposition, or any portion thereof, is offered in

9   evidence at the trial of this cause by any party thereto,

10  it shall be subject to any and all legal objections, such

11  objections to be made at the time of tender, the same as

12  though the witness were on the stand personally

13  testifying;

14          It was further agreed that the original

15  deposition transcript was delivered on the 2nd day of

16  March, 2004, to Mr. William Foster, in care of Richard

17  Mlynek, 62 East Price Road, Brownsville, Texas, for

18  examination and signature and is to be returned to

19  Pockrus Reporting Service.  If and when the original

20  deposition transcript is returned with the correction

21  sheet containing the changes made by the witness, if any,

22  a copy of the changes will be forwarded to all counsel of

23  record;

24          It was further agreed that in the event the

25  original deposition is not signed by the witness within

---

William Lee Foster | C&I Basic™ | February 26, 2004

Page 25

1 crossing over. So that smashed the car, smashed me
2 against the side, and it was a total loss. I had some
3 injury to myself, so we did some recovery on the car and
4 personal injury as well.
5    Q. And was your mother in that vehicle?
6    A. No.
7    Q. Okay, but she got some money out of it?
8       That's a poor question, let me ask it this way:
9 You mentioned something about your mother, you led me to
10 believe -- I'm not saying you mislead me, but I
11 understood the way you gave your testimony that your
12 mother had a claim out of this.
13    A. The vehicle was hers.
14    Q. Okay. Did she make any personal injury claims?
15    A. No.
16    Q. Okay. Were you the only occupant of your
17 vehicle in that accident?
18    A. I was the only one.
19    Q. Okay. And who was the person that was in the
20 other vehicle?
21    A. I do not know.
22    Q. Was there a lawsuit filed, or was it settled
23 without filing a lawsuit?
24    A. It was -- I believe they filed.
25    Q. Okay.

Page 26

1    A. We ended up filing.
2    Q. Okay. Was that here in Cameron County?
3    A. Yes.
4    Q. And now it's been settled?
5    A. Yes.
6    Q. Any other lawsuits?
7    A. No, sir.
8    Q. Have you ever been sued by anybody?
9    A. No, sir.
10    Q. Have you ever made a claim for disability
11 because of injuries at work or anything like that?
12    A. No, sir.
13    Q. Have you ever made a claim for unemployment
14 benefits?
15    A. Yes.
16    Q. Tell me about that.
17    A. When I left -- I apologize. When I was
18 terminated from Convergys I filed for unemployment.
19    Q. Okay. Other than that have you made any claim
20 for unemployment?
21    A. No, sir.
22    Q. Have you ever received any Social Security
23 benefits for any reason?
24    A. No, sir.
25    Q. Have you ever been in the military?

Page 27

1    A. No.
2    Q. You understand that I represent Check Alert
3 Systems, and you have sued my client on behalf of
4 yourself and others as part of a class action; do you
5 understand that?
6    A. Yes, sir.
7    Q. And you're claiming that you got some
8 communication with my client about a possible bad check
9 and that they employed illegal collection means in trying
10 to collect that. Do you understand that's what you're
11 alleging in this case?
12    A. That's what I understand.
13    Q. Okay.
14      MR. WIER: Let me stop here and mark a
15 couple of exhibits and I think we'll make this go a
16 little faster.
17      (Deposition Exhibits Nos. 1 and 2 marked
18      for identification).
19    Q. Okay. I'm going to hand you -- you've actually
20 got copies in front of you, but just so you have the
21 originals in front of you I'm going to hand you what I've
22 had marked as Exhibits 1 and 2 to your deposition.
23      And let's start with Exhibit 1. That appears to
24 be a copy, front and back, of a check; does it not?
25    A. Yes, sir.

Page 28

1    Q. And it looks like that that is a check -- it's
2 hard to make out, but I think it's written to Martin's
3 Food, and it's dated February 18th of '02.
4    A. That's correct.
5    Q. And is that your signature on the check?
6    A. Yes, sir.
7    Q. And that check, there's a printed portion of the
8 check that gives a P.O. box for you up in -- I'm sorry, I
9 can't pronounce the name of that town, in Michigan,
10 what's the?
11    A. Dowagiac.
12    Q. Okay. Dowagiac. You said that, but I couldn't
13 remember that.
14      MR. MLYNEK: Why would they name a town
15 like that?
16      THE WITNESS: It's an Indian name.
17    Q. (BY MR. WIER) And so were you residing in
18 Michigan at that time?
19    A. That's correct.
20    Q. And is that your -- I think you told me that's
21 your signature on the check; is it not?
22    A. Yes, sir.
23    Q. And you had an account with the Notre Dame
24 Federal Credit Union; is that true?
25    A. Yes, sir.

William Lee Foster                    C&I Basic™                    February 26, 2004

Page 41

1  Q. Is that what you're talking about when you say
2  "dishonored check"?
3  A. That is correct.
4  Q. What do you find upsetting about that?
5  A. I don't feel that my check was dishonorable. I
6  wrote it in good faith that I had the funds available and
7  that I would be able to -- it would clear. Unfortunately
8  it didn't.
9  Q. Now you said you don't feel the check was
10 "dishonorable." The check actually says "dishonored." I
11 mean, the letter says "dishonored check." Do you
12 understand what that means?
13 A. I understand it to mean that my check was not
14 honorable. In other words, it wasn't any good or I did
15 not have a valid checking account at the time or funds
16 available.
17 Q. Okay. Well, we've already established by
18 looking at Exhibit No. 1 that the check was not any good
19 when you wrote it, was it?
20 A. Yes, it was.
21 Q. Well, if it had been good it would have cleared,
22 wouldn't it?
23 A. That's a possibility. There's a lot of
24 possibilities for that check not to have cleared.
25 Q. Well, let's make sure we're understanding each

Page 42

1  other. When I use the -- use your words that you just
2  used, that the check is not any good, what I mean is you
3  did not have sufficient money in the bank to cover that
4  check at the time you wrote it.
5  A. I did not know that at the time.
6  Q. Okay. But you will acknowledge that's indeed
7  what occurred, by looking at Exhibit 1, true?
8  A. It's a possibility.
9  Q. What other possibility is there?
10 A. Like you mentioned, bank error.
11 Q. Since February of 2002 have you contacted your
12 bank to find out why that check bounced?
13 A. Let me see. No, not on this particular check.
14 Q. And you've already told me, under oath, that
15 when you got this first letter you filed it in a file and
16 you intended to take care of it, right?
17 A. That is correct.
18 Q. I mean, you knew that the check hadn't been paid
19 and you intended to pay it at a later date, right?
20 A. That's correct.
21 Q. But you never did that, did you?
22 A. No, sir.
23 Q. Okay. What else do you find objectionable or
24 offense about the language in the letter?
25 A. "The intentional writing of a bad check." That

Page 43

1  would be on the third paragraph, after the comma.
2  Q. Oh, okay. Third paragraph, "We have advised you
3  that under state law, the intentional writing of bad
4  checks can be grounds for criminal charges," that
5  sentence? Is that the sentence you're talking about?
6  A. That's correct.
7  Q. And you have some problems with the fact that it
8  says "the intentional writing of bad checks"?
9  A. That's correct.
10 Q. And why is that?
11 A. Because they are assuming that I intentionally
12 wrote a bad check.
13 Q. Okay. Now, it says here "We have advised you
14 that under state law the intentional writing of bad
15 checks." Do you know, as you sit here today, whether,
16 indeed, it is a violation of state law to intentionally
17 write a bad check?
18 A. Yes.
19 Q. Okay. So the way that that sentence is phrased,
20 that would be a true statement, wouldn't it?
21 A. The only part of the sentence that I'm not
22 agreeing with is where it says "We have advised." I
23 don't know whether that's true or not.
24 Q. When they say "We have advised," you're not sure
25 whether they told you that before?

Page 44

1  A. That's correct.
2  Q. Okay. But the rest of it where it says "Under
3  state law the intentional writing of bad checks can be
4  grounds for criminal charges," that's true, isn't it?
5         MR. MLYNEK: I'm going to object to the
6  form.
7  A. I --
8  Q. (BY MR. WIER) You can answer. Your lawyer is
9  doing his job, and unless he tells you not to answer,
10 once he objects you can go ahead and answer.
11 A. Are you asking me present date, or?
12 Q. Yes.
13 A. Present date, yes, I do understand that.
14 Q. Okay. So you have a problem with that
15 particular sentence even though it's a correct statement
16 of the law?
17        MR. MLYNEK: I'm going to object to the
18 form.
19 A. Yes.
20 Q. (BY MR. WIER) You're going to sue my client,
21 hold my client accountable for telling you something in a
22 letter that's a correct statement of the law?
23        MR. MLYNEK: Objection to form.
24 A. That's correct.
25 Q. (BY MR. WIER) And you think my client ought to

Page 49

1    A. I believe altogether I paid $1200.
2    Q. When you say "altogether," what did that consist
3    of?
4    A. There was an attorney fee, there was also court
5    fees, that's -- that was what I paid to this particular
6    office. And there was a lot of paperwork that I had to
7    get together and whatnot. I also had to travel in order
8    to make it to the court at a certain time.
9        In that aspect I would have to say, thinking
10   back now on your question, and I apologize for not
11   mentioning this earlier. I did have to take some time
12   off from work in order to meet the court dates and
13   whatnot.
14   Q. Okay. So did you lose time from work that you
15   want to be compensated for?
16   A. I'd have to say yes on that.
17   Q. Okay. How many hours or days do you think you
18   missed?
19   A. I would have to say days, altogether, coming
20   here and having to travel and whatnot, I would say a good
21   five days or so.
22   Q. So about 40 hours, more or less?
23   A. That's correct.
24   Q. And during this time period your rate of pay was
25   what?

Page 50

1    A. At the time of the bankruptcy?
2    Q. Yes, sir.
3    A. $7, I believe, an hour.
4    Q. Okay. With regard to your metal anguish, have
5    you been to see a psychiatrist or a psychologist to help
6    you deal with the stress you've just described?
7    A. No, sir.
8    Q. Have you ever been to see a psychiatrist or a
9    psychologist or other mental health-care doctor at any
10   time during your lifetime for any reason?
11   A. No, sir.
12   Q. Okay. Have you had to seek out the advice or
13   counsel of a doctor because of this stress that you're
14   claiming in this case?
15   A. I have to say -- I'm sorry, can you rephrase?
16   Q. Yeah. I'm trying to figure out if you've had
17   any doctor's visits whereby you've incurred any expense
18   such as medical bills for dealing with ailments that you
19   attribute to the stress.
20   A. With stress, sir, I would have to say yes. I've
21   recently visited my doctor and I've been diagnosed with
22   hypertension now. I have high blood pressure.
23   Q. When were you first diagnosed with high blood
24   pressure?
25   A. Approximately three weeks ago.

Page 51

1    Q. What doctor did you see for that?
2    A. Dr. Martinez.
3    Q. Is Dr. Martinez a man or a woman?
4    A. Female.
5    Q. And what is her first name?
6    A. I can spell it for you.
7    Q. Okay.
8    A. Y-a-n-i-a.
9    Q. Is she located here in Brownsville?
10   A. Yes, sir.
11   Q. What kind of a doctor is she?
12   A. Internal medicine.
13   Q. Okay. Did she put you on any medication?
14   A. Yes.
15   Q. What kind of medication? Do you know the name
16   of it?
17   A. Norvasc is one of them.
18   Q. What else did she put you on?
19   A. Can I borrow a pen. I have to spell it out. I
20   believe it's spelled something like this, I'll spell it
21   to you. L-o-t-e-n-s-i-n. It's some form of water pill
22   that's supposed to bring the blood pressure down.
23   Q. Okay. Anything else she put you on, other than
24   those two?
25   A. Let me think. Regarding to the stress, no, sir,

Page 52

1    or the hypertension, no.
2    Q. Okay. Were you having some other medical issues
3    that she was helping you with?
4    A. Yes.
5    Q. What were those?
6    A. I have sleep apnea.
7    Q. Okay.
8    A. I was diagnosed with that.
9    Q. Anything else she was helping you with besides
10   high blood pressure and sleep apnea?
11   A. I think I had some cold, chest congestion at the
12   time.
13   Q. Okay. So do you have some medical expense from
14   Dr. Martinez that you claim my client should pay for?
15   A. I really don't know, to tell you the truth.
16   Q. Well, let me ask you this: The medical expense
17   you've incurred with Dr. Martinez, do you have insurance
18   to cover that, or have you had to pay that out of your
19   own pocket?
20   A. Partial insurance.
21   Q. Okay. So you've had to pay some of it?
22   A. Yes.
23   Q. How much did you have to pay?
24   A. 30 percent.
25   Q. Do you know about what that was, dollar-wise?

William Lee Foster                    C&I Basic™                    February 26, 2004

Page 65

1  Q. Do you remember during the course of that
2  question whether he asked you whether you had any claims
3  for money contingent claims for money such as lawsuits or
4  anything like that?
5  A. Vaguely. I remember answering "No" to all the
6  questions. I do remember particularly having assets or
7  any money in the bank or houses and whatnot.
8  Q. Okay. So at the time of that meeting you didn't
9  tell the Trustee that you had a lawsuit or you were
10 thinking about a lawsuit that might bring you some money
11 at a later date?
12 A. No, I didn't tell them about that.
13      MR. WIER: I'm going to -- let's get this
14 marked, Ms. Court Reporter. Actually, let's mark this
15 one first; I'm sorry.
16      (Deposition Exhibit No. 4 marked for
17      identification).
18 Q. (BY MR. WIER) I'm going to hand you what I've
19 had marked as Exhibit No. 4 to your deposition, and
20 that's your bankruptcy Petition. Have you ever seen that
21 before?
22 A. (Witness examines document) I don't know, I
23 might have.
24 Q. And just for a point of reference, over on the
25 7th page, do you see where it says "Schedule B. Personal

Page 66

1  Property" up at the top?
2  A. "Schedule B"?
3  Q. Yes.
4  A. Okay.
5  Q. And it lists a '96 Dodge Intrepid, do you see
6  that?
7  A. Yes, sir.
8  Q. And did you have that vehicle at the time of
9  your bankruptcy?
10 A. Yes.
11 Q. And that's just by way of example to show you
12 that this was a petition your lawyer compiled on your
13 behalf showing all the property you had and all the debts
14 that you owed; would you agree with that?
15 A. Yes, sir.
16 Q. And if you flip on through and you look at
17 Schedule D., it's showing a creditor there, Notre Dame
18 Federal Credit Union, holding a secured claim on your
19 vehicle; do you see that?
20 A. That's correct.
21 Q. And then you have a Schedule F., going on down
22 showing creditors holding unsecured claims, and you see
23 several folks listed there, such as Amoco and AT&T
24 Wireless. Do you see that?
25 A. Yes, sir.

Page 67

1  Q. And that would be a list, and flipping on over
2  the next several pages, of all the folks that you owed
3  money to?
4  A. Yes, sir.
5  Q. And would you say that that was a true and
6  accurate picture of your financial condition at the time
7  that this was filed?
8  A. Yes, sir.
9      (Deposition Exhibit No. 5 marked for
10     identification).
11 Q. Okay. I'm going to hand you Exhibit No. 5, and
12 this is just something that we've gotten from the
13 courthouse that shows a list of all your creditors that
14 you owed money to at the time you filed the bankruptcy.
15 A. (Witness examines document).
16 Q. Do you see that?
17 A. Yes, sir.
18 Q. And that just appears to be just another list of
19 all the folks that you owed money to at the time that you
20 filed, right?
21 A. Yes, sir, that's what I see.
22 Q. And I counted up real quick, it looks like you
23 owe 32 different companies or individuals money; does
24 that sound about right?
25 A. That sounds about right.

Page 68

1  Q. Do you know whether any of these folks got paid
2  anything because of your bankruptcy?
3  A. I would not know.
4  Q. You understood the Trustee was trying to gather
5  together all your assets to satisfy these folks; is that
6  true?
7  A. Right.
8  Q. And you understood you owed all these folks
9  money and you understood that they would like to get
10 paid, if possible?
11 A. Yes, sir.
12 Q. Knowing that, if you were awarded money in this
13 case do you think it's fair that you get the money
14 instead of the money being distributed to these
15 creditors?
16     MR. MLYNEK: Objection to form.
17 A. The question of fairness, I have to say -- I
18 have to say there's a lot more involved, I believe, in
19 what we're trying to accomplish here today. And I
20 imagine I'd have to say yes, in the end it would be fair.
21 Q. (BY MR. WIER) Okay. It would be fair to you to
22 benefit from this financially to the expense of your
23 creditors?
24     MR. MLYNEK: Objection to form.
25 A. I think if justice is served, I believe so.

William Lee Foster                              C&I Basic™                              February 26, 2004

Page 81

1    Q. Okay. I thank you for your time.
2       MR. WIER: Pass the witness.
3       MR. MLYNEK: I'll reserve mine for trial.
4
5       (The proceedings concluded at 4:52 p.m.)
6
7          -o0o-
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 83

Certified to by me this the 2nd day of March, 2004.

_____

JUDITH GARRETT HENNIGH

CERTIFIED SHORTHAND REPORTER
STATE OF TEXAS
CERT. NO.: 1752   EXP. DATE: 12/31/04

POCKRUS REPORTING SERVICE
P.O. BOX 531786
HARLINGEN, TEXAS 78553
1-800-423-7713 (TOLL FREE)
1-956-350-4940 (PHONE)
1-956-350-3040 (FAX)

Page 82

REPORTER'S CERTIFICATION

I, JUDITH GARRETT HENNIGH, a Certified Shorthand

Reporter in and for the State of Texas, do hereby certify

that the facts stated by me in the caption hereto are

true; that the foregoing deposition transcript of WILLIAM
LEE FOSTER, the witness hereinbefore named, was at the
time mentioned taken by me in stenograph, the said
witness having been by me first duly cautioned and sworn
upon his oath to tell the truth, the whole truth, and
nothing but the truth, and later transcribed from
stenograph.

I further certify that I am neither attorney or
counsel for, nor related to or employed by any of the
parties to the action in which this deposition is taken,
and further certify that I am not a relative or employee
of any attorney or counsel employed by the parties
hereto, or financially interested in the action.

I further certify that the above and foregoing
deposition transcript as set forth in typewriting is a
full, true and correct transcript of the proceedings had
at the time of taking said deposition.

Page 84

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION
WILLIAM FOSTER, et al        )
                             )
                             ) CIVIL ACTION NO: B-02-196
                             )
                             )
CHECK ALERT SYSTEMS, INC.    )
*******************************************
FILING CERTIFICATE
ORAL DEPOSITION OF
WILLIAM LEE FOSTER
FEBRUARY 26, 2004
*******************************************
I, Judith Garrett Hennigh, Certified Shorthand
Reporter in and for the State of Texas, hereby certify to
the following:
That the witness, WILLIAM LEE FOSTER, was duly sworn
by the officer and that the transcript of the oral
deposition is a true record of the testimony given by the
witness;
That the deposition transcript was submitted on
March 2, 2004, to the witness in care of RICHARD A.
MLYNEK, 62 EAST PRICE ROAD, BROWNSVILLE, Texas, for

TX PENAL S 32.41                                                                                                  **Page 7**
V.T.C.A., Penal Code § 32.41
**C**

VERNON'S TEXAS STATUTES AND CODES ANNOTATED
**PENAL** CODE
TITLE 7. OFFENSES AGAINST PROPERTY
CHAPTER 32. FRAUD
SUBCHAPTER D. OTHER DECEPTIVE PRACTICES
§ 32.41. Issuance of Bad Check

(a) A person commits an offense if he issues or passes a check or similar sight order for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders outstanding at the time of issuance.

(b) This section does not prevent the prosecution from establishing the required knowledge by direct evidence; however, for purposes of this section, the issuer's knowledge of insufficient funds is presumed (except in the case of a postdated check or order) if:

(1) he had no account with the bank or other drawee at the time he issued the check or order; or

(2) payment was refused by the bank or other drawee for lack of funds or insufficient funds on presentation within 30 days after issue and the issuer failed to pay the holder in full within 10 days after receiving notice of that refusal.

(c) Notice for purposes of Subsection (b)(2) may be actual notice or notice in writing that:

(1) is sent by registered or certified mail with return receipt requested, by telegram with report of delivery requested, or by first class mail if the letter was returned unopened with markings indicating that the address is incorrect and that there is no current forwarding order;

(2) is addressed to the issuer at his address shown on:

(A) the check or order;

(B) the records of the bank or other drawee; or

(C) the records of the person to whom the check or order has been issued or passed; and

(3) contains the following statement:

"This is a demand for payment in full for a check or order not paid because of a lack of funds or insufficient funds. If you fail to make payment in full within 10 days after the date of receipt of this notice, the failure to pay creates a presumption for committing an offense, and this matter may be referred for criminal prosecution."

(d) If notice is given in accordance with Subsection (c), it is presumed that the notice was received no later than five days after it was sent.

(e) A person charged with an offense under this section may make restitution for the bad checks. Restitution shall be made through the prosecutor's office if collection and processing were initiated through that office. In other cases restitution may, with the approval of the court in which the offense is filed, be made through the court.

(f) Except as otherwise provided by this subsection, an offense under this section is a Class C misdemeanor. If the check or similar sight order that was issued or passed was for a child support payment the obligation for which is established under a court order, the offense is a Class B misdemeanor.

(g) An offense under this section is not a lesser included offense of an offense under Section 31.03 or 31.04.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



CREDIT(S)

Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. Amended by Acts 1983, 68th Leg., p. 5050, ch. 911, § 1, eff. Aug. 29, 1983; Acts 1987, 70th Leg., ch. 687, § 2, eff. June 18, 1987; Acts 1989, 71st Leg., ch. 1038, § 1, eff. June 16, 1989; Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994; Acts 1995, 74th Leg., ch. 753, § 2, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 702, § 14, eff. Sept. 1, 1997.

HISTORICAL AND STATUTORY NOTES

2003 Main Volume

The 1983 Amendment inserted a new subsec. (e) and relettered former subsec. (e) as subsec. (f).

The 1987 amendment added subsec. (g).

Section 3 of the 1987 amendatory act provides:

"(a) The change in law made by this Act applies only to the punishment for an offense committed on or after the effective date [June 18, 1987] of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

"(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose."

The 1989 amendment in subsec. (e) at the end of the third sentence deleted  ", by certified checks, cashiers checks, or money order only, payable to the person that received the bad checks".

The 1993 amendment made only nonsubstantive changes throughout.

The 1995 amendment rewrote subsec. (c) which previously read:

"(c) Notice for purposes of Subsection (b)(2) may be notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested, and addressed to the issuer at his address shown on:

"(1) the check or order;

"(2) the records of the bank or other drawee;  or

"(3) the records of the person to whom the check or order has been issued or passed."

Section 4 of the 1995 amendatory act provides:

"(a) The change in law made by this Act applies only to an offense committed on or after the effective date [Sept. 1, 1995] of this Act.  For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before that date.

"(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose."

Acts 1997, 75th Leg., ch. 702, in subsec. (f), in the first sentence, substituted "Except as otherwise provided by this subsection, an" for "An", and added the second sentence.

Section 15(e) of Acts 1997, 75th Leg., ch. 702 provides:

"The change in law made by this Act to Subsection (f), Section **32.41, Penal** Code, as amended by this Act, applies only

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

to an offense committed on or after the effective date [Sept. 1, 1997] of this Act. For purposes of this subsection, an offense is committed before the effective date of this Act if any element of the offense occurs before that date. An offense committed before the effective date of this Act is governed by the law in effect when the offense was committed, and the former law is continued in effect for that purpose."

Prior Laws:
Acts 1939, 46th Leg., p. 246.
Acts 1951, 52nd Leg., p. 496, ch. 305, § 1.
Acts 1963, 58th Leg., p. 729, ch. 268.
Acts 1965, 59th Leg., p. 1521, ch. 662, §§ 1, 2.
Acts 1969, 61st Leg., p. 1930, ch. 642, § 1.
Vernon's Ann.P.C. (1925) art. 567b.

V. T. C. A., Penal Code § 32.41, TX PENAL § 32.41

Current through the end of the 2003 Third Called Session

Copyright © 2004 by West, a Thomson business. All rights reserved.

END OF DOCUMENT

TX PENAL S 12.22                                                                    **Page 10**
 V.T.C.A., Penal Code § 12.22
**C**

VERNON'S TEXAS STATUTES AND CODES ANNOTATED
**PENAL** CODE
TITLE 3. PUNISHMENTS
CHAPTER 12. PUNISHMENTS
SUBCHAPTER B. ORDINARY MISDEMEANOR PUNISHMENTS
§ 12.22. **Class B Misdemeanor**

An individual adjudged guilty of a **Class B misdemeanor** shall be punished by:

(1) a **fine** not to exceed $2,000;

(2) confinement in **jail** for a term not to exceed 180 days;  or

(3) both such **fine** and confinement.

CREDIT(S)

Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.  Amended by Acts 1991, 72nd Leg., ch. 108, § 1, eff. Sept. 1, 1991;  Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

HISTORICAL AND STATUTORY NOTES

2003 Main Volume

Acts 1991, 72nd Leg., ch. 108, § 1, in subd. (1) substituted "$1,500" for  "$1,000".

Section 12 of Acts 1991, 72nd Leg., ch. 108 provides:

"(a) The changes in law made by Sections 1, 2, and 11 of this Act apply only to the punishment and court costs for an offense committed on or after the effective date [Sept. 1, 1991] of this Act.  For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

"(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose."

Acts 1993, 73rd Leg., ch. 900, § 1.01, in subd. (1), substituted "$2,000" for "$1,500";  and in subd. (3), substituted "confinement" for "imprisonment".

V. T. C. A., **Penal** Code § 12.22, TX **PENAL** § 12.22

Current through the end of the 2003 Third Called Session

Copyright © 2004 by West, a Thomson business. All rights reserved.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| MI ST 750.131 | | | MI-ST-ANN |
| M.C.L.A. 750.131 | | | |
| **C** | | | |

MICHIGAN COMPILED LAWS ANNOTATED
CHAPTER 750. MICHIGAN PENAL CODE
THE MICHIGAN PENAL CODE
CHAPTER XIX. CHECKS WITHOUT SUFFICIENT FUNDS
750.131. Drawing on insufficient funds; punishment

Sec. 131. (1) A person shall not make, draw, utter, or deliver any check, draft, or order for the payment of money, to apply on account or otherwise, upon any bank or other depository with intent to defraud and knowing at the time of the making, drawing, uttering, or delivering that the maker or drawer does not have sufficient funds in or credit with the bank or other depository to pay the check, draft, or order in full upon its presentation.

(2) A person shall not make, draw, utter, or deliver any check, draft, or order for the payment of money, to apply on account or otherwise, upon any bank or other depository with intent to defraud if the person does not have sufficient funds for the payment of the check, draft, or order when presentation for payment is made to the drawee. This subsection does not apply if the lack of funds is due to garnishment, attachment, levy, or other lawful cause and that fact was not known to the person when the person made, drew, uttered, or delivered the check, draft, or order.

(3) A person who violates this section is guilty of a crime as follows:

(a) If the amount payable in the check, draft, or order is less than $100.00, as follows:

(i) For a first offense, a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

(ii) For an offense following 1 or more prior convictions under this section or a local ordinance substantially corresponding to this section, a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00 or both.

(b) If the amount payable in the check, draft, or order is $100.00 or more but less than $500.00, as follows:

(i) For a first or second offense, a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00 or 3 times the amount payable, whichever is greater, or both imprisonment and a fine.

(ii) For an offense following 2 or more prior convictions under this section, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both. For purposes of this subparagraph, however, a prior conviction does not include a conviction for a violation or attempted violation of subdivision (a).

(c) If the amount payable in the check, draft, or order is $500.00 or more, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00 or 3 times the amount payable, whichever is greater, or both imprisonment and a fine.

(4) If the prosecuting attorney intends to seek an enhanced sentence based upon the defendant having 1 or more prior convictions, the prosecuting attorney shall include on the complaint and information a statement listing the prior conviction or convictions. The existence of the defendant's prior conviction or convictions shall be determined by the court, without a jury, at sentencing or at a separate hearing for that purpose before sentencing. The existence of a prior conviction may be established by any evidence relevant for that purpose, including, but

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT

G

not limited to, 1 or more of the following:

(a) A copy of the judgment of conviction.

(b) A transcript of a prior trial, plea-taking, or sentencing.

(c) Information contained in a presentence report.

(d) The defendant's statement.

(5) If the sentence for a conviction under this section is enhanced by 1 or more prior convictions, those prior convictions shall not be used to further enhance the sentence for the conviction pursuant to section 10, 11, or 12 of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.10, 769.11, and 769.12.

CREDIT(S)

Amended by P.A.1984, No. 277, § 1, Eff. March 29, 1985;  P.A.1998, No. 312, Eff. Jan. 1, 1999.

<General Materials (GM) - References, Annotations, or Tables>

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| MI ST 750.132 | | | MI-ST-ANN |
| M.C.L.A. 750.132 | | | |
| C | | | |

———————————————— Page 1 ————————————————

**TEXT**
MICHIGAN COMPILED LAWS ANNOTATED
CHAPTER 750. MICHIGAN PENAL CODE
THE MICHIGAN PENAL CODE
CHAPTER XIX. CHECKS WITHOUT SUFFICIENT FUNDS
750.132. Evidence of intent

**TEXT 132**

Sec. 132. EVIDENCE OF INTENT TO DEFRAUD, ETC.--As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, when presented in the usual course of business, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with such bank or other depository, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within 5 days after receiving notice that such check, draft or order has not been paid by the drawee.

< General Materials (GM) - References, Annotations, or Tables >

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| MI ST 750.133 | | | MI-ST-ANN |
| M.C.L.A. 750.133 | | | |
| C | | | |

───────────── Page 1 ─────────────

TEXT
MICHIGAN COMPILED LAWS ANNOTATED
CHAPTER 750. MICHIGAN PENAL CODE
THE MICHIGAN PENAL CODE
CHAPTER XIX. CHECKS WITHOUT SUFFICIENT FUNDS
750.133. Evidence of intent; notice of protest

TEXT 133

Sec. 133. NOTICE OF PROTEST AS EVIDENCE OF INTENT TO DEFRAUD, ETC.--Where such check, draft or order is protested, on the ground of insufficiency of funds or credit, the notice of protest thereof shall be admissible as proof of presentation, non-payment and protest, and shall be prima facie evidence of intent to defraud, and of knowledge of insufficient funds or credit with such bank or other depository.

<General Materials (GM) - References, Annotations, or Tables>

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| MI ST 750.134 | | | MI-ST-ANN |
| M.C.L.A. 750.134 | | | |
| C | | | |

———————————————— Page 1 ————————————————

TEXT
MICHIGAN COMPILED LAWS ANNOTATED
CHAPTER 750. MICHIGAN PENAL CODE
THE MICHIGAN PENAL CODE
CHAPTER XIX. CHECKS WITHOUT SUFFICIENT FUNDS
750.134. Checks without sufficient funds; credit construed

TEXT 134

Sec. 134. CREDIT CONSTRUED--The word "credit" as used herein, shall be construed to mean an arrangement or understanding with the bank or depository, for the payment of such check, draft or order, in full, upon the presentation thereof for payment.

<General Materials (GM) - References, Annotations, or Tables>

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works