UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED
SEP 3 0 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| WILLIAM FOSTER, Individually and on behalf of all others similarly situated § § § | |
| VS. § | CIVIL ACTION NO. B-02-196 |
| CHECK ALERT SYSTEMS, INC. § § § | |

## MEMORANDUM AND ORDER

Pending before the court are two motions: (1) William Foster's ("Plaintiff") Motion for Class Certification (Docket No. 18) and (2) Check Alert Systems, Inc.'s ("Defendant") Motion for Summary Judgment (Docket No. 33). The Original Complaint alleged violations of both the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Texas Debt Collection Practices Act, TEX. FIN. CODE ANN. Ch. 392 ("TDCPA"). *Docket No. 1*. The alleged violations stem from written statements made in collection letters sent to Plaintiff by Defendant. For the reasons stated below, Defendant's Motion for Summary Judgment is hereby **GRANTED**. Plaintiff's Motion for Class Certification is, therefore, denied as moot.

I.   **FACTS**

William Foster, while living in Michigan, wrote a check for $34.62 to Martin's Supermarket. *Docket No. 33*. The check was returned to the supermarket by Foster's bank due to insufficient funds. Shortly thereafter, Martin's Supermarket directed Check Alert Systems, Inc. to collect the outstanding debt. Check Alert attempted to contact Mr. Foster through form letters after he had moved to Texas.

One such letter, dated May 24, 2002, serves as the basis of most of Plaintiff's FDCPA and

TDCPA claims.[1] It states that $69.62 is owed on the account ($34.62 plus a $35 service charge). The relevant language of the letter is as follows:

> WE ARE ATTEMPTING TO HELP YOU BEFORE THIS DISHONORED CHECK IS RECOMMENDED FOR FURTHER COLLECTION EFFORTS.
>
> We have advised you that under State Law, the intentional writing of bad checks can be grounds for CRIMINAL CHARGES.
>
> AVOID FURTHER ACTION AND PROTECT YOUR CHECKWRITING PRIVILEGES

*Docket No. 33*, Ex. A.

The Original Complaint was filed on October 11, 2002. *Docket No. 1*. Plaintiff asserted that Check Alert's collection letters violated both the FDCPA and the TDCPA because they threatened further "legal action" and represented that criminal charges would be filed against the debtor when Check Alert did not plan to and never did in fact pursue such a remedy. *Id.* at ¶ 14. Plaintiff also asserted that Check Alert violated the TDCPA by failing to maintain a surety bond before engaging in debt collection within the State of Texas under Texas Finance Code § 392.101. *Id.* at ¶ 21. Plaintiff sought declaratory relief, money damages, restitution, and injunctive relief on behalf of two classes. *Docket No. 18*.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the

---

[1] Depositions show that other collection letters were probably sent to Mr. Foster; however, the May 24, 2002 letter (Docket No. 34, Exhibit 5) is the only letter that was attached to the Original Complaint. Exhibit 17 of Plaintiff's response to the motion for summary judgment also contains language that Plaintiff claims violates the FDCPA and the TDCPA. *Docket No. 34.* Since the court must view the evidence in the light most favorable to the non-movant, and since Mr. Foster testified he received additional letters, and Ms. Rendon, Check Alert's representative, testified that it was probably sent to him, the court assumes that Mr. Foster received Exhibit 17.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment evidence is viewed in the light most favorable to the non-movant. *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

### III. DISCUSSION

#### A. FDCPA Claims

In general, most circuits apply either the least sophisticated consumer standard or the unsophisticated consumer standard in determining whether a debt collector has engaged in deceptive practices under the FDCPA. The Fifth Circuit has refrained from choosing between the two standards because "[t]he difference between the standards is de minimus at most." *Peter v. GC Servs. L.P.*, 310 F.3d 344, n.1 (5th Cir. 2002). Under either standard, the court "must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). The question is whether, from an objective standpoint, an unsophisticated, or the least sophisticated, consumer would be deceived or misled by a debt collector's communication.

Plaintiff claims that Check Alert threatened both criminal prosecution and civil litigation. *Docket No. 34* at p.5. Since neither Exhibit 5 nor Exhibit 17 specifically refer to legal action, one must presume that Plaintiff's argument relies on two assumptions: (1) that mentioning the legal consequences of writing a bad check is in and of itself threatening and (2) using the word "ACTION" specifically implies to an unsophisticated consumer that legal action is meant. Under the plain-meaning interpretation of the letters, Plaintiff was informed that state law criminalizes the intentional writing of bad checks, that Defendant is obligated to advise Martin's Supermarket of its right to file a criminal or civil complaint, and that he could avoid further collection efforts by paying the amount in full. These statements are not objectively misleading or threatening. In fact, they are true. This court finds that neither letter violates the FDCPA.

B.   TDCPA claims

Although the Original Complaint does not specify which section of the TDCPA Defendant allegedly violated, Plaintiff's response to Defendant's Motion for Summary Judgment points to Section 392.304(a)(8) of the Texas Finance Code as the basis of its TDCPA claim. *Docket No. 34*, p.5. Texas Finance Code § 392.304(a)(8) prohibits the misrepresentation of a "consumer debt's status in a judicial or governmental proceeding." Neither the May 24, 2002 letter nor Exhibit 17 states or implies that Mr. Foster's debt was involved in a judicial or governmental proceeding at that time. Therefore, the letters do not violate the TDCPA under § 392.304(a)(8).

Since the May 24, 2002 letter refers to the possibility of criminal charges, and Exhibit 17 refers to Martin's Supermarket's right to file a civil or criminal complaint against Mr. Foster, Plaintiff argues that this court should apply a Supreme Court of Texas case holding that "threats

-4-

of criminal prosecution" violate the TDCPA as a matter of law. *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). *Brown* is distinguishable from the present matter. First, Check Alert did not threaten criminal prosecution by stating truthfully that "the intentional writing of bad checks can be grounds for criminal charges" under state law.[2] Second, Check Alert did not affirmatively state that a civil or criminal complaint would be filed against Mr. Foster. Third, *Brown* was decided under different sections of the former TDCPA statute, sections not invoked by Plaintiff in this case.[3] While it is clear that Check Alert was not performing a public service by informing Plaintiff of the law concerning hot checks, it is also clear that Defendant's behavior falls short of that prohibited by both the FDCPA and the TDCPA. Plaintiff has made somewhat ambiguous claims for injunctive and declarative relief in his Original Complaint. These claims were predicated upon the court finding the actions of the defendant to be illegal. Since this court has not found Plaintiff's claims of illegality to be valid, it also denies the equitable relief that was sought based upon those claims.

Plaintiff's most compelling argument under the TDCPA is that Check Alert failed to obtain and file a $10,000 surety bond before it engaged in debt collection in Texas. TEX. FIN. CODE ANN. § 392.101. Check Alert concedes it did not obtain a bond before sending collection letters to Mr. Foster. Texas Finance Code § 392.403(e) provides that "A person who successfully maintains an action under this section for violation of [the bond requirement]...is entitled to not less than $100 for each violation of this chapter." At first glance, the statute

---

[2] *E.g.*, TEX. PENAL CODE ANN. § 32.41; MICH. COMP. LAWS ANN. 750.131.

[3] Both *Brown* and *Elston* (infra) were decided under a previous version of the TDCPA. TEX. REV. CIV. STAT. ANN. art. 5069-11. The language of the statute did not change significantly when it was re-codified in the Finance Code in 1997.

appears to impose an automatic penalty on any debt collector who fails to file proof of obtaining a surety bond before it engages in debt collection within Texas. Under *Elston v. Resolution Servs., Inc.*, 950 S.W.2d 180 (Tex. App.—Austin 1997, no writ), however, an additional proof requirement is imposed upon plaintiffs. Under *Elston*, the mere fact a debt collector engaged in debt collection without the required surety bond does not automatically establish liability because statutory damages are conditioned upon a Plaintiff's recovery of an award of actual damages. This court will follow Texas law in addressing the Plaintiff's TDCPA claims and, therefore, will follow *Elston*, which is the only Texas case on point.[4] Plaintiff has failed to establish that he incurred damages recoverable under Texas Finance Code § 392.403(a), formerly found in Texas Revised Civil Statutes Article 5069-11.10(a), related to the alleged violations and, therefore, is not entitled to statutory damages pursuant to § 392.403(e), formerly found in Texas Revised Civil Statutes Article 5069-11.10(c).

## IV.   CONCLUSION

The court **GRANTS** Check Alert's Motion for Summary Judgment. The letters sent by Check Alert do not rise to the level of conduct punishable by the FDCPA or TDCPA. Moreover, under *Elston*, Plaintiff is not entitled to statutory damages for Defendant's failure to obtain and file a surety bond pursuant to Texas Finance Code § 392.101. Since the Court has granted Defendant's Motion for Summary Judgment, all parties concede there is no need to decide the

---

[4]*Elston* specifically addressed the recovery of actual damages without addressing whether a successful suit for injunctive relief also gives rise to an award of statutory damages. In dicta, the court suggested that it would have also denied the requested injunctive relief because the defendant had arguably complied with the statute and the claims were, therefore, moot. The same argument could be made here. Since the institution of this lawsuit, Check Alert has stopped collecting debts within Texas. If the court had needed to consider the injunctive relief with respect to the bond, it would have denied same because, based upon *Elston*, the issue would likewise be moot.

class certification issues.  Consequently, Plaintiff's Motion for Class Certification (Docket No. 18) is denied as moot.

    Signed this 30th day of September, 2004.

                                                                               Andrew S. Hanen
                                                                               United States District Judge